JUDGE BUCHWALD

LAWRENCE C. FOX (LF-2503)
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600/Fax: (212) 826-3640

'08 CIV 3893

Attorneys for Defendant Ahava of California, LLC

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SIGNATURE BANK,                                        :

                              Plaintiff,               :

        - against -                                    :

AHAVA FOOD CORP., LEWIS COUNTY DAIRY                    :
CORP., ST. LAWRENCE FOOD CORP. d/b/a PRIMO             :
FOODS, YONI REALTY, LLC, SCHWARTZ AND                  :
SONS QUALITY DISTRIBUTORS, INC., MOISE                 :
BANAYAN, ANA BANAYAN a/k/a CHANA                       :
BANAYAN, REBECCA BANAYAN a/k/a REBECCA                 :
BARIMYAN a/k/a REBECCA BANAYAN-                        :
LIEBERMAN, FARIBORZ BANAYAN a/k/a                      :
AARON BANAYAN, RUBEN BEITYAKOV,                        :
ARI KATZ, AHAVA OF CALIFORNIA, LLC d/b/a               :
AHAVA NATIONAL FOOD DISTRIBUTOR                        :
and NORTH COUNTRY MANUFACTURING, and                  :
JOHN DOE COMPANIES 1 through 10                       :
                                                       :
                              Defendants.              :
-----------------------------------------------------------------X



08-CV-          (    )

**NOTICE OF REMOVAL**

(Removal from Supreme Court
of the State of New York, County
of New York)

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1441 et seq., Defendant Ahava of California, LLC, by its attorneys, hereby states the following grounds for removal of this action to the United States District Court for the Southern District of New York:

1.    On April 23, 2008, counsel for Defendant Ahava of California LLC received by e-mail from counsel for Signature Bank a copy of a Supplemental Summons and Amended Verified Complaint in the action then pending in the Supreme Court of the State of New York, County of New York, titled Signature Bank v. Ahava Food Corp., et al., Index No. 600959/2008 (Freedman, J.). A copy of the Supplemental Summons and Amended Verified Complaint is attached as Exhibit A.

2.    In the Amended Verified Complaint, Plaintiff Signature Bank alleges, inter alia, that Defendants, including Ahava of California LLC, have conspired to evade Signature's Judgment against some of the Defendants by participating in fraudulent transfers. Plaintiffs' Amended Verified Complaint asserts nine causes of action against Defendants, four of them under the Federal RICO statute.

3.    This United States District Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 because, by virtue of the RICO claims, this action arises under the laws of the United States.

4.    Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is being timely filed within 30 days after receipt of an amended pleading from which it was first ascertained that this case has become removable.

5.    Based upon reasonable investigation, defendants who are not formally joining in this removal have not yet been properly served with process.

WHEREFORE, this action has been removed to this Court and shall proceed herein.

Dated: New York, N.Y.
April 25, 2008

KORNSTEIN VEISZ WEXLER & POLLARD, LLP

By: _____
Lawrence C. Fox
757 Third Avenue
New York, New York  10017
(212) 418-8600

Attorneys for Defendant
Ahava of California, LLC

TO:    HERRICK, FEINSTEIN, LLP
2 Park Avenue
New York, New York  10016
(212) 592-1400

Attorneys for Plaintiff

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------ x

SIGNATURE BANK,                                    : Index No.: 600959/2008
                                                   :
                    Plaintiff,                     :
                                                   :
          - against -                              :
                                                   :
AHAVA FOOD CORP. d/b/a NORTH COUNTRY               :
CHEESE CORP., LEWIS COUNTY DAIRY CORP.,            :   **SUPPLEMENTAL SUMMONS**
ST. LAWRENCE FOOD CORP. d/b/a PRIMO               :   **Basis of venue is plaintiffs residence:**
FOODS, YONI REALTY, LLC, SCHWARTZ AND             :
SONS QUALITY DISTRIBUTORS, INC., MOISE            :   565 Fifth Avenue
BANAYAN, ANA BANAYAN a/k/a CHANA                  :   New York, New York
BANAYAN, REBECCA BANAYAN a/k/a                    :
REBECCA BARIMYAN a/k/a REBECCA                    :
BANAYAN-LIEBERMAN, FARIBORZ BANAYAN               :
a/k/a AARON BANAYAN, RUBEN BEITYAKOV,             :
ARI KATZ, AHAVA OF CALIFORNIA, LLC d/b/a          :
AHAVA NATIONAL FOOD DISTRIBUTOR and               :
NORTH COUNTRY MANUFACTURING, and                  :
JOHN DOES 1 through 50,                           :
                                                   :
                    Defendants.                    :
------------------------------------------------------------ x

**TO THE ABOVE-NAMED DEFENDANT:**

> **You are hereby summoned** to answer the Amended Verified Complaint in this
action and to serve a copy of your answer, or, if the Amended Verified Complaint is not served
with this Supplemental Summons, to serve a notice of appearance, on Plaintiffs' Attorney(s)
within 20 days after the service of this Supplemental Summons, exclusive of the day of service
(or within 30 days after the service is complete if this Supplemental Summons is not personally
delivered to you within the State of New York); and in case of your failure to appear or answer,
judgment will be taken against you by default for the relief demanded in the complaint.

Dated:   New York, New York
         April 22, 2008              HERRICK, FEINSTEIN LLP


                                     By:_____

                                     2 Park Avenue
                                     New York, New York 10016
                                     Telephone:    (212) 592-1400
                                     Facsimile:    (212) 592-1500
                                     Attorneys for Plaintiff Signature Bank

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------- x

SIGNATURE BANK,

                    Plaintiff,

           - against -

AHAVA FOOD CORP. d/b/a NORTH COUNTRY
CHEESE CORP., LEWIS COUNTY DAIRY CORP.,
ST. LAWRENCE FOOD CORP. d/b/a PRIMO
FOODS, YONI REALTY, LLC, SCHWARTZ AND
SONS QUALITY DISTRIBUTORS, INC., MOISE
BANAYAN, ANA BANAYAN a/k/a CHANA
BANAYAN, REBECCA BANAYAN a/k/a
REBECCA BARIMYAN a/k/a REBECCA
BANAYAN-LIEBERMAN, FARIBORZ BANAYAN
a/k/a AARON BANAYAN, RUBEN BEITYAKOV,
ARI KATZ, AHAVA OF CALIFORNIA, LLC d/b/a
AHAVA NATIONAL FOOD DISTRIBUTOR and
NORTH COUNTRY MANUFACTURING, and
JOHN DOES 1 through 50,

                    Defendants.

------------------------------------------------------------- x

:  Index No.: 600959/2008

**AMENDED VERIFIED
COMPLAINT**

          Plaintiff Signature Bank ("Signature" or "the Bank"), by its attorneys, Herrick,

Feinstein LLP, for its Amended Verified Complaint against defendants alleges as follows:

## NATURE OF THE ACTION

        1.     This complaint seeks equitable and monetary relief arising from the

unlawful and fraudulent conduct of defendants, who have been engaged in a conspiracy to evade

the $9.3 million judgment entered by this Court on March 14, 2008 (the "Judgment") against

Moise Banayan, Ana Banayan, Ahava Food Corp. ("Ahava"), Lewis County Dairy Corp.

("Lewis County Dairy"), St. Lawrence Food Corp. ("St. Lawrence"), Yoni Realty LLC ("Yoni")

and Schwartz and Sons Quality Distributors, Inc. ("Schwartz & Sons") (collectively referred to

as the "Judgment Debtors") in a prior lawsuit (the "Initial Lawsuit").

        2.     Roughly two months ago -- before this Court issued its Judgment

awarding Signature over $9.3 million -- Moise Banayan stated under oath that the Judgment Debtors were earning on average "more than $160,000 in gross profit per week." Today, however, Mr. Banayan claims that the Judgment Debtors are no longer "active" and cannot satisfy the Bank's judgment.

3.     The reason for this is simple. From no later than December 1, 2007 to the present, Mr. Banayan and the other defendants have conspired to transfer the assets of the Judgment Debtors to Ahava of California, LLC (and perhaps other entities affiliated with Moise Banayan) in an effort to shield those assets from the Judgment Debtors' indebtedness to Signature which resulted in the Judgment.

4.     By Moise Banayan's own admission, the business once operated by the Judgment Debtors is now being operated solely by Ahava of California under the d/b/a of Ahava National Food Distributor and North Country Manufacturing. In furtherance of this scheme designed to deprive Signature of the collateral pledged in connection with the Judgment Debtors' indebtedness, defendants caused the Judgment Debtors to fraudulently assign virtually all of their accounts receivable and intangible property to Ahava of California.

5.     In fact, in March 2007, defendants caused the Judgment Debtors to assign, *nunc pro tunc*, all of their registered trademarks to Ahava of California. And, in a further effort to evade this Court's Judgment, the Judgment Debtors, upon information and belief, effectively relinquished to Ahava of California (d/b/a Ahava National Food Distributor and North Country Manufacturing) for little or no consideration, all of their real and personal property -- including their office buildings, processing plants, delivery trucks, and products.

6.     Upon information and belief, these fraudulent transfers and assignments were done for little or no consideration and were done for the sole purpose of allowing

defendants to seamlessly continue the businesses of the Judgment Debtors while keeping the actual assets in the name of entities that were not named in the Initial Lawsuit.

7.    As a result of these fraudulent transfers, Ahava of California is purportedly the only "active company" left, and its reported revenues are now over $18 million. These annual sales figures closely resemble the Judgment Debtors' business in 2007 -- which should come as no surprise since Ahava of California has taken over the Judgment Debtors' businesses -- and is far greater than the $1 million in sales Ahava of California represented it was earning as late as February 7, 2008, and the roughly $378,000 in gross revenues Ahava of California declared on its 2006 tax return.

8.    While Ahava of California's business has rapidly grown without any legitimate explanation, Ahava of California has claimed -- in court papers and otherwise -- that it has absolutely no relationship to the Judgment Debtors.  Yet, the evidence makes clear that Ahava of California is, in fact, owned and/or controlled by Moise Banayan and serves as the Judgment Debtors' alter ego.

9.    For example, the evidence adduced by Signature to date makes clear that:

- **Moise Banayan and his brother co-own Ahava of California.**
  Under the 2005 loan documents that Moise Banayan executed on behalf of the Judgment Debtors, he unambiguously represented to Signature that Ahava of California was an "affiliate non-obligor" that he and his brother "owned". That representation was confirmed in February and December of 2007, when Moise Banayan (i) was identified as a "partner" in Ahava of California (sharing 50% of the profits) on its Federal tax return; and (ii) told Robert Bloch, a Senior Vice President of Signature, that he was a partner in Ahava of California.

- **Moise Banayan controls Ahava National Food Distributor (the d/b/a of Ahava of California).** In a 2006 OSHA decision, Mr. Banayan was found to be the "president" of Ahava of California. Mr. Banayan then confirmed this fact when he sent a letter to an Ahava of California customer and represented to that customer that

3

he was the president of Ahava National Food Distributor (the d/b/a for Ahava of California).

- **Defendants treat Ahava of California and the Judgment Debtors as effectively one in the same.** In addition to what is described above, defendants shared office-space and a website prior to Signature filing its lawsuit to enforce the judgment. Once served with the complaint in this action, however, defendants (i) represented that the Brooklyn office space once shared by the Judgment Debtors and Ahava of California is now solely occupied by Ahava of California, and (ii) shut down the website that was shared by the Judgment Debtors and Ahava of California.

10.    While defendants have fraudulently transferred the Judgment Debtors' assets to their alter ego, Ahava of California, defendants have engaged in other practices to frustrate Signature's ability to enforce its Judgment.

11.    For example, defendants have repeatedly prevented Signature from exercising its contractual right under the loan documents to examine the Judgment Debtors' pledged collateral, thereby preventing Signature from conducting the due diligence required to sell those assets and satisfy its Judgment.

12.    This fraudulent and impermissible conduct, coupled with the conduct described above, constitutes, among other things, breach of contract, conversion, fraud (both at common law and under New York's Debtor Creditor Laws) and a violation of the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq*.

13.    Indeed, defendants' scheme to shield the Judgment Debtors' assets through the purportedly "independent" Ahava of California is the culmination of the defendants' years-long pattern of deceit with respect to the financing and operation of their businesses. in connection with this scheme, defendants have committed dozens, if not hundreds, of the predicate acts listed in 18 U.S.C. § 1961, including, without limitation, mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), money laundering (18

4

U.S.C. § 1956), and transportation and receipt of stolen property (18 U.S.C. §§ 2314 and 2315). These violations of criminal law, committed in furtherance of defendants' scheme, continue unabated to this day.

14.    Accordingly, Signature seeks an order (i) declaring that Ahava of California is an alter-ego of the Judgment Debtors, (ii) rescinding any asset transfers between the Judgment Debtors and any of the other named defendants, and (iii) awarding defendants damages, in an amount to be determined at trial but in no event less than $27 million plus reasonable attorneys' fees.

## THE PARTIES

15.    Plaintiff Signature Bank is a New York banking corporation, with its principal place of business at 565 Fifth Avenue, New York, New York.

16.    Defendant Ahava Foods Corp. is a New York corporation, with its principal place of business at 110 Beard Street, Brooklyn, New York.

17.    Defendant Lewis County Dairy Corp. is a New York corporation, with its principal place of business at 7705 State Route 812, Lowville, New York.

18.    Defendant St. Lawrence Food Corp. is a New York corporation, with its principal place of business at 30 Main Street, Ogdenburg, New York.

19.    Defendant Yoni Realty, LLC is a New York corporation, with its principal place of business at 110 Beard Street, Brooklyn, New York.

20.    Defendant Schwartz & Sons Quality Distributors, Inc. ("Schwartz & Sons") is a New York corporation with its principal place of business at 110 Beard Street, Brooklyn, New York.

21.    Defendant Ahava of California, LLC d/b/a Ahava National Food

Distributor and North Country Manufacturing is a California Limited Liability Company, with its principal place of business at 908 Rose Avenue, Venice, California and offices at 236-280 Richard Street, Brooklyn, New York and/or 110 Beard Street, Brooklyn, New York.

22.    Defendants John Does 1 through 50 are, upon information and belief, fictitious trade names for the Corporate Defendants and/or the Judgment Debtors, or other individual co-conspirators in the fraudulent acts.

23.    Defendant Moise Banayan is a resident of New York, with an address at 51 Parker Boulevard, Monsey, New York.

24.    Defendant Ana Banayan a/k/a Chana Banayan is a resident of New York, with an address at 51 Parker Boulevard, Monsey, New York.

25.    Upon information and belief, defendant Rebecca Banayan a/k/a Rebecca Barimyan a/k/a Rebecca Banayan-Lieberman is a resident of New York, with addresses at 2606 East 24th Street, Brooklyn, New York, 205 Third Avenue, Apt. 2N, New York, New York and 215 East 96th Street, Apartment 40H, New York, New York.

26.    Defendant Fariborz Banayan a/k/a Aaron Banayan a/k/a Aaron Nanayan is a resident of California, with an address at 908 Rose Avenue, Venice, California.

27.    Defendant Ruben Beityakov is a resident of New York, with an address at 1977 East 22nd Street, Brooklyn, New York.

28.    Defendant Ari Katz is a resident of New York, with an unknown address and a place of business at 110 Beard Street, Brooklyn, New York.

**JURISDICTION AND VENUE**

29.    This Court has jurisdiction pursuant to pursuant to CPLR § 301, because plaintiff is a resident of this State.

6

30.     Venue in this county is proper pursuant to CPLR § 503, because plaintiff is a resident of this county.

## FACTUAL ALLEGATIONS

*The Judgment Debtors Use Misrepresentations to*
*Secure Loans and Forbearances From Signature*

31.     Since at least 1984, Moise Banayan has been operating an empire of businesses engaged in the kosher food business, under various iterations of the trade name "Ahava".

32.     Beginning in August 22, 2005, and extending over the course of the following two years, Signature entered into a series of loan agreements with the Judgment Debtors, whereby Signature agreed to loan the Judgment Debtors approximately $9 million plus extend $2 million in overdrafts to finance their kosher food business. All of these loans were guaranteed personally by Moise Banayan, and some were personally guaranteed by his wife, Ana Banayan, and were further secured by security agreements giving Signature a first priority lien over substantially all of the assets of the Judgment Debtors, and liens on other assets of Moise and Ana Banayan, individually.

33.     Signature agreed to make the original loans, and to subsequently extend additional credit and forbearances, based upon the misrepresentations by the Judgment Debtors of their assets and liabilities and the condition of their businesses, and due in part to their failure to disclose other indebtedness to third parties.

34.     For example, in 2000, Moise Banayan borrowed $4 million from an individual by the name of Isaac Chera pursuant to a "shtar" -- a form of IOU under Jewish law -- in order to refurbish and renovate the property owned by Yoni, which served as the headquarters

7

for the Judgment Debtors' businesses. Upon information and belief, neither Moise Banayan, Ahava Food nor Yoni ever repaid the $4 million.

35.    Yet, in 2005, when negotiating the original loans, Moise Banayan used interstate wires and/or the U.S. Mail on repeated occasions to communicate with Signature with respect to the assets and liabilities of the Judgment Debtors, and the condition of their business and intentionally failed to disclose the $4 million loan borrowed from Isaac Chera pursuant to the "shtar" upon which Moise Banayan had pledged a 49 percent interest in Yoni as collateral.

36.    Over the next two or so years, Moise Banayan negotiated forbearance agreements using interstate wires and/or the U.S. Mail and convinced Signature to extend the Judgment Debtors' time to pay, in exchange for additional guarantees and pledges of collateral.

37.    During one round of these negotiations, which occurred in the summer of 2007, Moise Banayan certified that he was the sole member of Yoni which owns defendants' Brooklyn headquarters to induce Signature to extend additional credit to the Judgment Debtors. (*See* Manager's Certificate of Yoni Realty LLC, annexed hereto as Exhibit A).

38.    While Mr. Banayan certified to Signature that he controlled 100 percent of the equity in Yoni, it turned out that that representation was false. In fact, upon information and belief, Moise Banayan had transferred a 48.5 percent interest in Yoni roughly nine months earlier to an entity owned and/or controlled by Isaac Chera in order to satisfy all or portion of the $4 million shtar. (*See* Stock Certificate identifying ISC 96 Beard LLC, annexed hereto as Exhibit B).

39.    In early 2007, a third-party judgment in excess of $600,000 was entered against some of the Judgment Debtors. Although the loan documents unambiguously required the Judgment Debtors to inform Signature of this judgment, Moise Banayan instead concealed it,

and fraudulently omitted them from his numerous communications with Signature through interstate wires and/or the U.S. mail to delay any default by the Judgment Debtors and any foreclosure proceedings by the Bank.

40.     In fact, much like defendants have done here with Ahava of California, Moise Banayan and other Judgment Debtors attempted to frustrate the judgments against them by creating an alleged "independent" entity -- in this case, Schwartz & Sons -- that would be responsible for "distributing" the goods sold by the Ahava Foods and Lewis County Dairy.

41.     At the time, Moise Banayan represented to Signature that Schwartz & Sons was owned by another, unrelated individual, and was designated to sell Ahava products to the Hasidic community.

42.     Shortly thereafter, however, Schwartz & Sons became the primary distributor of the Judgment Debtors' products. Upon information and belief, the Judgment Debtors, in essence, were using Schwartz & Sons -- just like they are using Ahava of California here -- as the "independent" entity to collect funds actually owed to the debtors under that third party judgment.

43.     In June 2007, however, in order for Moise Banayan to get further forbearance from the Bank, he represented to Signature that he was now the sole owner of Schwartz & Sons. At or around that time, much of the Judgment Debtors' receivables were going through Schwartz & Sons.

*The Judgment Debtors Default on their Loans and*
*Signature Obtains Its Judgment In the Initial Lawsuit*

44.     After the Judgment Debtors stopped making payments on the loans, diverted deposits from Signature, and stopped reporting and providing access to the books and records of the businesses (as they were required to do) in November 2007, Signature initiated a

9

lawsuit against the Judgment Debtors in the Supreme Court for the State of New York, which sought an award of money damages in the amount of the unpaid loans, plus interest and costs.

45.    In addition, in December 2007 and January 2008, Signature sent UCC 9-607 notices to many of the Judgment Debtors' customers (the names having been provided to Signature by Moise Banayan in connection with the loans) informing them of its first priority lien on substantially all of the Judgment Debtors' accounts receivable. Signature instructed the customers that all payments should be remitted to Signature, and not to the Judgment Debtors.

46.    On March 14, 2008, this Court granted summary judgment in the Initial Lawsuit to Signature and against all the Judgment Debtors (other than Ana Banayan) jointly and severally, in the amount of $9,338,962.18, and against Ana Banayan, individually, for 1,781,621.53.

47.    To date, the Judgment Debtors have refused to satisfy any portion of Signature's Judgment against them and, have instead, (i) interfered with Signature's ability to sell collateral under the UCC (as it has the right to do under the loan documents), and (ii) claimed that they are unable to satisfy the Judgment because they are no longer in operation.

*Defendants' Scheme to Evade the Judgment Unfolds*

48.    Upon information and belief, defendants knew long before this Court rendered the Judgment that the Judgment Debtors would be liable for over $9 million.

49.    In fact, defendants set their plan in motion months before the Judgment was entered as evidenced by a February 7, 2008 email from Moise Banayan to Amerisource Funding Inc. ("Amerisource"), a prospective lender, in which Mr. Banayan confirmed that the businesses of the Judgment Debtors had been transferred to Ahava of California in December 2007. Specifically, Moise Banayan stated:

10

Tanya,

Here is the corporate structure:

Today, as of December 1st 2007, there is only one active company: Ahava of California LLC which has tow [sic] DBA: Ahava National Food Distributor for the distribution center and North Country Manufacturing for the manufacturing end.

All invoices are generated by Ahava National Distributor or Ahava of California.


Historically

The distributor was Schwartz and Sons Quality Distributor, and Ahava of California LLC as well as Ahava Food Corp. The manufacturing end was Lewis County Dairy and St. Lawrence Food Corp.

Thanks Moshe.

(*See* Email dated February 7, 2008, annexed hereto as Exhibit C).

50.     Mr. Banayan's comments seem to be at odds with representations that he made to this Court that very same week, when he said in an affidavit filed in the Initial Lawsuit that "my companies" were on average, earning "more than $160,000 in gross *profit per week*" (*See* Affidavit of Moise Banayan, sworn to February 1, 2008, annexed hereto as Exhibit D, at ¶ 35) (emphasis added).

51.     Indeed, assuming that Ahava of California is a wholly distinct entity from the Judgment Debtors (including Moise Banayan) -- as Ahava of California has maintained -- Mr. Banayan's companies, which were purportedly inactive, could not have been earning $160,000 in gross profits per week.

52.     On the other hand, if Mr. Banayan owned or controlled Ahava of California, as Signature believes to be the case, then Mr. Banayan's February 2008

11

representations to this Court might actually be truthful. In other words, his "companies" included Ahava of California which was operating the business of the Judgment Debtors earning in excess of $160,000 gross profits per week.

      53.    Whatever the case may be, it is clear that in or before December 2007, defendants began to engage in a scheme to transfer the Judgment Debtors' assets to Ahava of California to avoid Signature's judgment. Defendants' scheme to avoid the Judgment is further evidenced by the following:

    *(1)*    *Delay, Delay, Delay*

      54.    The loan documents make clear that Signature has the absolute right, after an Event of Default or non-payment, to "take possession of the Collateral and without liability for trespass to enter any premises where the Collateral may be located for the purpose of taking possession of or removing the Collateral." (*See* copy of Security Agreement dated August 27, 2007, annexed hereto as Exhibit E, at ¶ 8(h)).

      55.    Notwithstanding this clear and unambiguous right, defendants have directed their employees to refuse Signature access to the property and premises where the pledged collateral resides.

      56.    In fact, even as late as April 15, 2008, defendants refused Signature access to the facilities owned by the Judgment Debtors which have been fraudulently conveyed or leased to Ahava of California.

      57.    Defendants' tactics are designed to delay or frustrate altogether Signature's ability to rightfully take possession of its collateral.

      58.    Similarly, Moise Banayan continues to correspond with Signature in an effort to stave off any action by Signature to foreclose on the collateral.

59.    Back in November and December 2007, Mr. Banayan claimed that a "white knight" buyer and/or potential lending institutions had been located, and asked for various accommodations based on the benefits that would purportedly come to both parties if he was given time to negotiate.

60.    Upon information and belief, Moise Banayan made these statements with knowledge of their falsity, intending Signature to rely, while the defendants were engaged in transferring the Judgment Debtors' assets into the hands of Ahava of California or other John Doe companies.

61.    Upon information and belief, Moise Banayan used interstate wires on at least seven separate occasions to further defendants' scheme with these emails. (*See* copies of emails between Moise Banayan and Signature, annexed hereto as Exhibit F).

(2)    *Diversion of the Judgment Debtors' Assets*

62.    While Moise Banayan and the Judgment Debtors were purportedly attempting to work out a solution to satisfy Signature, defendants were diverting the Judgment Debtors' assets to Ahava of California.

63.    The assets included the Judgment Debtors' physical assets (such as the real property), trademarks, and accounts receivable, all of which were pledged as collateral for the Judgment Debtors' loans.    Thus, Signature has a right to those assets under the loan documents.

(a)    *Customer Lists and Accounts Receivable*

64.    As part of their plan to frustrate Signature's judgment, defendants arranged for the Judgment Debtors' customers to begin paying Ahava of California for goods

being manufactured by or that were purchased by the Judgment Debtors.

65.     For example, prior to the filing of the Initial Lawsuit, Moshes Discount Supermarket in Brooklyn, was instructed to remit payments for goods sold and delivered to Schwartz & Sons, one of the Judgment Debtors.  (*See* Invoice dated September 17, 2007, annexed hereto as Exhibit G).

66.     That account receivable, along with thousands of others, was pledged by the Judgment Debtors as collateral for the loans given by Signature.

67.     However, in December 2007, after it became clear that the Bank would seek legal redress, Schwartz & Sons instructed Moshes, by use of interstate wires and/or the U.S. Mail, to remit payment to Ahava National, an entity that was not a defendant to the Initial Lawsuit. (*See* Invoice dated December 17, 2007, annexed hereto as Exhibit H.)

68.     It now appears, based on the email Moise Banayan sent Amerisource, that all of the Judgment Debtors' customers have been instructed by defendants, through the use of interstate wires and/or the U.S. Mail, to pay Ahava of California on invoices issued, goods purchased for resale and/or products manufactured by the Judgment Debtors.

69.     Moreover, the fact that Ahava of California has converted all of the Judgment Debtors' accounts receivable is separately confirmed by the fact that it provided a virtually identical list of accounts receivable to Amerisource in connection with its application for financing as Ahava Foods had provided to Signature in connection with its request for forbearance.

> (b)     *Defendants' Nunc Pro Tunc Assignment of the Judgment Debtors' Trademarks*

70.     In addition to customer lists and accounts receivable, defendants caused the Judgment Debtors to transfer their trademarks to Ahava of California.

14

71.     The trademarks, like the accounts receivable, were pledged by the Judgment Debtors as collateral for the loans provided by Signature.

72.     Nevertheless, on March 6, 2008, defendants used or caused the use of interstate wires and/or the U.S. Mail to transmit a request to the United States Patent and Trademark Office (the "USPTO") seeking an assignment *nunc pro tunc* to Ahava of California of eleven different trademarks owned by Ahava Food.

73.     On March 7, 2008, the USPTO approved the request, and the assignment of the trademarks to Ahava of California was recorded on the USPTO's internet-accessible database. (*See* Abstracts of Assignment for each of the eleven trademarks reflecting their assignment *nunc pro tunc* to Ahava of California, collected and annexed hereto as Exhibit I).

74.     The defendants' *nunc pro tunc* assignments of the Judgment Debtors' trademarks to Ahava of California were critical to defendants' scheme. Indeed, since these trademarks are the brand names by which the Judgment Debtors' customers know the Judgment Debtors' products, Ahava of California had to own the marks in order to sell the Judgment Debtors' products without paying royalties to the Judgment Debtors (which would plainly be subject to Signature's liens). Thus, defendants fraudulently conveyed the trademarks to Ahava of California so the latter could seamlessly step into the business formerly operated by the Judgment Debtors.

(c)     *Defendants' De Facto Assignment of the Judgment Debtors'*
        *Physical Assets*

75.     In addition to transferring the Judgment Debtors' accounts receivable and trademarks, defendants caused possession and/or title to all of the Judgment Debtors' physical assets to be transferred to Ahava of California.

76.     For example, the Brooklyn headquarters, which was once occupied and

15

used by the Judgment Debtors, is now purportedly occupied solely by Ahava of California.

77.    In fact, process servers appearing at the Brooklyn headquarters to serve process on the Judgment Debtors were turned away by persons on that site who stated that the Judgment Debtors no longer operate there, and that the site was now operated only by Ahava National (an admitted d/b/a of Ahava of California).

78.    Until this failed service, Signature had no notice that one of the properties it holds as collateral on the Judgment Debtors' loan was now being operated by a claimed "separate" enterprise.

79.    Likewise, the Judgment Debtors' upstate dairy plants are now being used solely to produce products intended for sale by Ahava of California. Indeed, Moise Banayan represented that Judgment Debtors Lewis County Dairy and St. Lawrence, the manufacturers of Ahava Food products, are now known as North Country Manufacturing, a d/b/a for Ahava of California.

*Macabee Food Corp.*

80.    The full story of defendants' attempt to frustrate their judgment creditors, including Signature, through the creation of alter-egos is well documented in their relationship with Macabee Food Inc. ("Macabee").

81.    In that case, Macabee was being billed by Ahava as late as April 13, 2007 for "Golan Part Skim Mozzarella", whose "Item Code" was 1711, and whose UPC was 720742691488. (*See* Invoice from Ahava to Macabee, dated April 13, 2007, annexed hereto as Exhibit J).

82.    Then, on April 18, 2007 -- after Moise Banayan caused Schwartz & Sons to be used as the billing vehicle to avoid other judgment creditors -- Macabee received a letter

from Ahava stating it was now using "Schwartz & Sons . . . to enhance our distribution." This letter was signed by Ari Katz as Director of Operations for Ahava Food (*See* Letter from Katz to Macabee dated April 18, 2007, annexed hereto as Exhibit K).

83.    Shortly thereafter, Macabee was invoiced by Schwartz & Sons.  (*See* Invoice from Schwarts (sic) & Sons to Macabee, dated July 16, 2007, annexed hereto as Exhibit L).

84.    By November 2007, however, -- at or around the time the Judgment Debtors decided to stop making payments on their loans to Signature and began their fraudulent scheme -- Macabee started to receive invoices from Ahava of California, for the exact same product it had originally purchased from Ahava in April 2007, *i.e.*, "Golan Part Skim Mozzarella", with an "Item Code" of 1711, and UPC of 720742691488. (*Compare* Invoice from Ahava of California dated November 14, 2007, annexed hereto as Exhibit M, *with* Exhibit J).

85.    In order to explain to Macabee (and its other customers) the recurring change in payees, Ari Katz, who had previously sent a letter to Macabee on behalf of Ahava Food as its Director of Operations, sent a letter to Macabee now on behalf of Ahava National (the d/b/a for Ahava of California), actually claiming that the switch from Schwartz & Sons was made because of "[t]he level of service and [because] customer service has been lacking"— despite the fact that the "service" was being performed by the same workers, whether their nominal employer was Ahava Food, Schwartz & Sons, or Ahava of California/Ahava National (*See* undated letter from Ari Katz, annexed hereto as Exhibit N).

86.    In other words, defendants' interactions with Macabee illustrate that defendants have long been engaged in a game of "Three Card Monty", all in an attempt to frustrate judgment creditors (like Signature) and continue their business unabated.

*Defendants' Dun & Bradstreet Report Makes Clear*
*that Ahava of California is a Fraudulent Transferee*

87.     Prior to the initiation of this lawsuit, the Judgment Debtors had always represented to Signature that Ahava of California was a small company, with little revenue to speak of.

88.     Those representations were confirmed by Ahava of California's 2006 Federal Income Tax returns, which state that Ahava of California's "gross receipts or sales" were equal to $378,410. (*See* Ahava of California 2006 tax return, annexed hereto as Exhibit O).

89.     In fact, as recently as February 7, 2008, Ahava of California had reported that it had two employees and annual sales worth $1 million. (*See* Dun & Bradstreet Report dated February 7, 2008, annexed hereto as Exhibit P).

90.     Today, by contrast, only months later, Ahava of California's listing on Dun & Bradstreet, as amended by Ruben Beityakov, reflects $18 million in annual sales revenue and a payroll of 150 employees. (*See* Dun & Bradstreet report dated April 22, 2008, annexed hereto as Exhibit Q).

91.     These numbers establish that Ahava of California has now assumed the businesses of the Judgment Debtors. Indeed, the $18 million in revenue and 150 employees are numbers that closely approximate the figures applicable to the Judgment Debtors' business in the year 2007 (based upon current weekly sales figures provided by Moise Banayan).

92.     And since, upon information and belief, Ahava of California never paid any consideration for the Judgment Debtors' businesses, the Dun & Bradstreet report confirms that Ahava of California is a fraudulent transferee.

*Additional Evidence Makes Clear That*
*Ahava of California is an Alter Ego of the Judgment Debtors*

93.    The documentary evidence also shows that Ahava of California is an alter

ego of the Judgment Debtors and is dominated and controlled by Moise Banayan.

94.    Specifically:

- In the Master Credit Facility Agreement between the Judgment Debtors and Signature, the Judgment Debtors admitted that Ahava of California was an affiliate of the Judgment Debtors and was owned by Moise and Fariborz Banayan. (*See* Schedule 3.11 of the Master Credit Facility Agreement dated August 22, 2005, annexed hereto as Exhibit R).

- In a March 2007 email, Moise Banayan admitted to Signature that he was prepared to sell "**our** California operations" (*See* Email from Moise Banayan to Bloch dated March 29, 2007, annexed hereto as Exhibit S), and has further admitted that Ahava of California took over the businesses of the Judgment Debtors (*see* Exhibit C).

- In Ahava of California's 2006 tax returns, Moise Banayan is listed as a partner with a 50% ownership share. (*See* Exhibit O).

- On or about December 23, 2007, Moise Banayan sent a letter to a customer that identifies him as the president of Ahava National. (*See* Letter from Moise Banayan to Rabbi Lasker dated December 23, 2007, annexed hereto as Exhibit T).

- The Certificate of Assumed Name filed by Ahava of California with New York State Department of State, Division of Corporations, lists Ahava National Food Distributor's principal location as 110 Beard Street, the very same address of Judgment Debtors Ahava Food Corp., Schwartz & Sons and Yoni. (*See* Certificate of Assumed Name annexed hereto as Exhibit U).

- The Certificate of Assumed Name filed by Ahava of California with New York State Department of State, Division of Corporations, lists North Country Manufacturing's principal location as 7705 State Route 812, Lowville, NY, the very same address of Judgment Debtor Lewis County Dairy. (*See* Certificate of Assumed Name annexed hereto as Exhibit V).

- Moise Banayan lists the address for Ahava National on a letter sent to a customer as 236-280 Richard Street, Brooklyn, NY 11231, the

same address as Ahava Food Corp., Schwartz & Sons and Yoni. (*See* Exhibit T).

- Ahava of California's offices are also variously listed as located either at 236-280 Richard Street, Brooklyn, NY -- an address for a building that also bears the 110 Beard Street address (*see* Exhibit M) or 96 Beard Street, Brooklyn (in the New York Department of State Register), which also bears the 110 Beard Street address, the home of Ahava Foods and the other Judgment Debtors, Schwartz & Sons and Yoni.

- A 2006 decision from an OSHA proceeding relating to the Judgment Debtors' operations in upstate New York identifies the owner of Ahava of California as Moise Banayan. (*See* Decision, annexed hereto as Exhibit W.)

- Defendant Rebecca Banayan a/k/a Rebecca Barimyan a/k/a Rebecca Banayan-Lieberman, in her capacity as Office Manager, signed and certified the Ahava of California's Limited Liability Statement filed with the State of California (*see* Limited Liability Statement, annexed hereto as Exhibit X), and was listed, until only weeks ago, as Sales Manager/Special Accounts on the now defunct website of Ahava Foods. (*See* website contents, annexed hereto as Exhibit Y).

95.    Separate and apart from this evidence, the online Superpages directory lists Ahava of California as having the same website as Ahava Food, www.ahavafoodcorp.com. (*See* Listing attached hereto as Exhibit Z).[1]

96.    Notably, the website instructed customers of Ahava Foods to contact Aaron Banayan (a/k/a Fariborz Banayan) with respect to sales of Ahava Foods' products in California. The website did not identify Aaron Banayan as operating a separate company called Ahava of California, nor did it inform customers that they would be dealing with that company, and not Ahava Foods, if they wished to buy kosher dairy foods in California. (*See* Exhibit Z).

97.    Put simply, Ahava of California is the Judgment Defendants' alter ego.

---

[1] Since the first complaint in this action was filed on April 2, 2008, the www.ahavafoodcorpo.com website has been deactivated. Upon information and belief. defendants used, or caused to be used, interstate wires and/or the U.S. Mail to transmit instructions to the Judgment Debtors' web hosting company to deactivate the website.

*Ahava of California is an Ongoing Corrupt Enterprise,*
*All of Whose Income and Assets Belong to Signature*

98.     Now that defendants have transferred -- albeit fraudulently -- the assets of the Judgment Debtors, they are using that alter-ego to launder the Judgment Debtors' assets as quickly as possible, in order to allow defendants to abscond with whatever liquid capital can be extracted during and around one of busiest times of year -- *i.e.*, the Passover holiday--for the defendants' business.

99.     Indeed, virtually every time Ahava of California transacts business, it is dealing in stolen property (*i.e.*, the property that was fraudulently transferred to it by the Judgment Debtors). Thus, every time defendants receive compensation, income or reimbursement from Ahava of California, they are knowingly receiving stolen property.

100.    Signature has thus far identified at least six separate instances in which defendants have used, or caused to be used, interstate wires or the U.S. Mail, to instruct customers to send Ahava of California the proceeds from Ahava of California's illegal operation of the Judgment Debtors' business, in furtherance of defendants' scheme to evade the Judgment.

101.    The Judgment Debtors' customers from whom such payments have been fraudulently solicited through interstate wires and/or the U.S. Mail include Agriprocessors South, Altra Food Distribution, GMY Gourmet Food, Twin City Poultry, Macabee Foods and Moshe's Discount Supermarket, with at least one solicitation directed at each customer.

102.    To be sure, these invoices reflect Ahava of California's collection of money owed to the Judgment Debtors because they reference products bearing the trademarked brand names that were purportedly "assigned" by the Judgment Debtors. (*Compare* invoices included in Exhibits H and M reflecting sales of products bearing brand names "New Square" and "Golan" *with* Abstracts of Assignment for those trademarks included in Exhibit I).

103.    In addition, these customers are being told that if they adhere to the instructions from Signature to remit payment to Signature rather than the Judgment Debtors or any company affiliated with the Judgment Debtors, they will not be provided any additional product from Ahava of California and will remain liable for their existing invoices.

104.    Upon information and belief, defendants are continuing to use, or causing to be used, interstate wires and/or the U.S. Mail to solicit payments from customers in connection with Ahava of California's illegal operation of the Judgment Debtors' business, in furtherance of defendants' fraudulent scheme to evade the Judgment.

105.    The proceeds from Ahava of California's business with the Judgment Debtors' customers and its use of the Judgment Debtors' trademarked brand names are the fruits of defendants' unlawful conduct.

106.    Upon information and belief, and to an extent known only to defendants, certain Judgment Debtors and non-Judgment Debtor defendants, including Moise, Ana, and Aaron Banayan, Rebecca Banayan a/k/a Rebecca Banayan-Liebowitz, and Ruben Beityakov, have each, at least once, knowingly received proceeds of this criminal enterprise, whether in the form of salary, consulting fees, shareholder distributions, dividends, expense reimbursements, or otherwise, and have, upon information and belief, received each tranche of said proceeds into personal bank accounts controlled either by one or more of the defendants.

*Damages to Signature and Requested Relief*

107.    As a consequence of defendants' ongoing criminal conspiracy, and the extensive fraudulent conveyance of the Judgment Debtors' assets that is at the center of that conspiracy, Signature's attempts to enforce its judgment against the Judgment Debtors have been frustrated, and the value of its collateral is being imperiled, if not actually damaged.

108.    Defendants' continued operation of the fraudulently-conveyed kosher food business of the Judgment Debtors threatens to destroy or impair the Bank's right to execute upon the collateral pledged to Signature, whether through mismanagement, abandonment, conversion, tarnishment of the Judgment Debtors' valuable trademarks, or otherwise.

109.    Signature, therefore, requests a rescission of the fraudulent conveyances of the Judgment Debtors' business to Ahava of California, a transfer of the conveyed assets directly to Signature. Signature also requests a declaratory judgment that Ahava of California is an alter-ego of the Judgment Debtors and the Individual Defendants. Signature also requests an accounting of all of the books, records, and other financial information of all of the corporate defendants. Finally, Signature requests compensatory and punitive damages (tripled pursuant to the RICO statute) and reasonable attorneys' fees.

## FIRST CAUSE OF ACTION

### (RICO: Violation of 18 U.S.C. § 1962(a))
### (Use of Racketeering Income to Acquire an Interest in or to Establish or Operate an Enterprise Engaged in or Affecting Interstate Commerce)

110.    Signature repeats and realleges paragraphs 1 through 109 above, as if set forth here in full.

111.    Income received by defendants from the Judgment Debtors and/or Ahava of California was derived from a pattern of racketeering activity.

112.    Defendants used income received from the Judgment Debtors and/or Ahava of California to acquire an interest in or establish or operate Ahava of California.

113.    Alternatively, defendants used income received from the Judgment Debtors and/or Ahava of California to acquire an interest in or establish or operate an enterprise-in-fact consisting of all of the defendants.

23

114.    The predicate acts committed by defendants as part of a pattern of racketeering activity include:

- Mail Fraud (18 U.S.C. § 1341)

- Wire Fraud (18 U.S.C. § 1343)

- Bank Fraud (18 U.S.C. § 1344)

- Money Laundering (18 U.S.C. § 1956)

- Transportation of Stolen Property (18 U.S.C. § 2314)

- Receipt of Stolen Property (18 U.S.C. § 2315)

115.    Ahava of California is a business engaged in and/or affecting interstate commerce.  Specifically, Ahava of California is a California corporation and maintains its books and records and bank accounts in that state, but does the majority of its business in the State of New York.

116.    Alternatively, the enterprise-in-fact consisting of all of the defendants is a business engaged in and/or affecting interstate commerce.  Specifically, said enterprise in fact utilizes Ahava of California, a California corporation, as part of a unified enterprise with other businesses located in New York.

117.    Defendants' use of income derived from a pattern of racketeering activity to acquire an interest in or establish or operate Ahava of California has damaged, and continues to damage, Signature, in that Ahava of California is the vehicle by which defendants are conspiring to deprive Signature of enforcing its Judgment against the Judgment Debtors.

118.    Pursuant to 18 U.S.C. § 1964(c), Signature is entitled to an award of triple money damages from defendants on account of the violations of 18 U.S.C. §1962(a) described above.

119.    Signature respectfully requests a judgment against the Judgment Debtors

24

for compensatory damages in an amount to be determined at trial, and for punitive damages in the amount of $1 million, which damages should be tripled pursuant to 18 U.S.C. § 1964(c).

## SECOND CAUSE OF ACTION

### (RICO: Violation of 18 U.S.C. § 1962(b))
### (Use of Racketeering Income to Acquire or Maintain an Interest in an Enterprise Engaged in or Affecting Interstate Commerce Through a Pattern of Racketeering Activity)

120.    Signature repeats and realleges paragraphs 1 through 119 above, as if set forth here in full.

121.    Income received by defendants from the Judgment Debtors and/or Ahava of California was derived from a pattern of racketeering activity.

122.    Defendants used income received from the Judgment Debtors and/or Ahava of California to acquire or maintain an interest in Ahava of California through a pattern of racketeering activity.

123.    Alternatively, defendants used income received from the Judgment Debtors and/or Ahava of California to acquire or maintain an interest in an enterprise-in-fact consisting of all of the defendants through a pattern of racketeering activity.

124.    The predicate acts committed by defendants as part of a pattern of racketeering activity include:

- Mail Fraud (18 U.S.C. § 1341)

- Wire Fraud (18 U.S.C. § 1343)

- Bank Fraud (18 U.S.C. § 1344)

- Money Laundering (18 U.S.C. § 1956)

- Transportation of Stolen Property (18 U.S.C. § 2314)

- Receipt of Stolen Property (18 U.S.C. § 2315)

125.    Ahava of California is a business engaged in and/or affecting interstate commerce. Upon information and belief, Ahava of California is a California corporation and maintains its books and records and bank accounts in that state, but does the majority of its business in the State of New York.

126.    Alternatively, the enterprise-in-fact consisting of all of the defendants is a business engaged in and/or affecting interstate commerce. Specifically, said enterprise in fact utilizes Ahava of California, a California corporation, as part of a unified enterprise with other businesses located in New York.

127.    Defendants' use of income derived from a pattern of racketeering activity to acquire or maintain an interest in Ahava of California through a pattern of racketeering activity has damaged, and continues to damage, Signature, in that Ahava of California is the vehicle by which defendants are conspiring to deprive Signature of its Judgment against the Judgment Debtors.

128.    Pursuant to 18 U.S.C. § 1964(c), Signature is entitled to an award of triple money damages from defendants on account of the violations of 18 U.S.C. §1962(b) described above, plus reasonable attorneys' fees.

129.    Signature respectfully requests a judgment against the Judgment Debtors for compensatory damages in an amount to be determined at trial, and for punitive damages in the amount of $1 million, which damages should be tripled pursuant to 18 U.S.C. § 1964(c), plus reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

### (RICO: Violation of 18 U.S.C. § 1962(c))
### (Use of Racketeering Income to Conduct or Participate in Conducting an Enterprise
### Engaged in or Affecting Interstate Commerce Through a Pattern of Racketeering Activity)

130.    Signature repeats and realleges paragraphs 1 through 129 above, as if set forth here in full.

131.    Income received by defendants from the Judgment Debtors and/or Ahava of California was derived from a pattern of racketeering activity.

132.    Defendants used income received from the Judgment Debtors and/or Ahava of California to conduct or participate in conducting Ahava of California through a pattern of racketeering activity.

133.    Alternatively, defendants used income received from the Judgment Debtors and/or Ahava of California to conduct or participate in conducting an enterprise-in-fact consisting of all of the defendants through a pattern of racketeering activity.

134.    The predicate acts committed by defendants as part of a pattern of racketeering activity include:

- Mail Fraud (18 U.S.C. § 1341)

- Wire Fraud (18 U.S.C. § 1343)

- Bank Fraud (18 U.S.C. § 1344)

- Money Laundering (18 U.S.C. § 1956)

- Transportation of Stolen Property (18 U.S.C. § 2314)

- Receipt of Stolen Property (18 U.S.C. § 2315)

135.    Defendants' pattern of racketeering is open-ended and ongoing, and poses the threat of continuing criminal conduct.

136.    Ahava of California is a business engaged in and/or affecting interstate

27

commerce. Specifically, Ahava of California is a California corporation and maintains its books and records and bank accounts in that state, but does the majority of its business in the State of New York.

137.    Alternatively, the enterprise-in-fact consisting of all of the defendants is a business engaged in and/or affecting interstate commerce. Specifically, said enterprise in fact utilizes Ahava of California, a California corporation, as part of a unified enterprise with other businesses located in New York.

138.    Defendants' use of income derived from a pattern of racketeering activity to conduct or participate in conducting Ahava of California through a pattern of racketeering activity has damaged, and continues to damage, Signature, in that Ahava of California is the vehicle by which defendants are conspiring to deprive Signature of its Judgment against the Judgment Debtors.

139.    Pursuant to 18 U.S.C. § 1964(c), Signature is entitled to an award of triple money damages from defendants on account of the violations of 18 U.S.C. § 1962(c) described above.

140.    Signature respectfully requests a judgment against the Judgment Debtors for compensatory damages in an amount to be determined at trial, and for punitive damages in the amount of $1 million, which damages should be tripled pursuant to 18 U.S.C. § 1964(c).

## FOURTH CAUSE OF ACTION

### (RICO: Violation of 18 U.S.C. § 1962(d))
### (Conspiracy to Violate RICO)

141.    Signature repeats and realleges paragraphs 1 through 140 above, as if set forth here in full.

142. Each of defendants agreed with at least one of the other defendants to commit acts and/or omissions in furtherance of a common conspiracy to violate 18 U.S.C. § 1962.

143. Pursuant to 18 U.S.C. § 1964(c), Signature is entitled to an award of triple money damages from defendants on account of the violations of 18 U.S.C. § 1962(d) described above.

144. Signature respectfully requests a judgment against the Judgment Debtors for compensatory damages in an amount to be determined at trial, and for punitive damages in the amount of $1 million, which damages should be tripled pursuant to 18 U.S.C. § 1964(c).

## FIFTH CAUSE OF ACTION

### (Rescission of Fraudulent Conveyances: Debtor & Creditor Law § 273-a)

145. Signature repeats and realleges paragraphs 1 through 144 above, as if set forth here in full.

146. The conveyances made by the defendants of the Judgment Debtors' assets to Ahava of California were made without fair consideration.

147. At the time of certain of the conveyances, the Judgment Debtors were indebted to Signature, were defendants in an action for money damages or were debtors in the Judgment in such action that had been docketed against them.

148. A final judgment has been rendered against the Judgment Debtors that remains unsatisfied.

149. Signature respectfully requests that the Court enter a judgment rescinding all conveyances of assets belonging to the Judgment Debtors to Ahava of California, and directing Ahava of California to transfer all such assets directly to Signature.

29

## SIXTH CAUSE OF ACTION

### (Rescission of Fraudulent Conveyances: Debtor & Creditor Law § 276)

150.    Signature repeats and realleges paragraphs 1 through 149 above, as if set forth here in full.

151.    At the time of the conveyances, the Judgment Debtors knew that they owed a debt to Signature and that Signature was making efforts to collect its debts from the Judgment Debtors.

152.    The conveyances made by the Judgment Debtors to Ahava of California were made with the actual intent to hinder, delay, and defraud Signature.

153.    Signature respectfully requests that the Court enter a judgment rescinding all conveyances of assets to Ahava of California belonging to the Judgment Debtors, and directing the defendants to transfer all such assets directly to Signature.

## SEVENTH CAUSE OF ACTION

### (Common-Law Fraud)

154.    Signature repeats and realleges paragraphs 1 through 153 above, as if set forth here in full.

155.    By failing to disclose the conveyances from the Judgment Debtors to Ahava of California, the defendants made material omissions of fact.

156.    Defendants' omissions constituted false representations of material facts.

157.    Defendants intended for Signature to rely on their fraudulent omissions.

158.    Signature has, in fact, reasonably and justifiably relied on defendants' fraudulent omissions to its detriment.

159.    Signature has been damaged by its reliance on defendants' omissions, in that it has been deprived of its ability to foreclose and/or collect on the collateral pledged to it

30

under the Judgment Debtors' loans.

160.    Signature respectfully requests a judgment against defendants for compensatory damages in an amount to be determined at trial, and for punitive damages in the amount of $1 million.

## EIGHTH CAUSE OF ACTION
### (Declaratory Judgment)

161.    Plaintiff repeats and realleges paragraphs 1 through 160 above, as if set forth here in full.

162.    Ahava of California is completely dominated and controlled by Moise Banayan and some or all of the other Judgment Debtors.

163.    Ahava of California is being used, and has been used in the past by the defendants as a successor-in-interest to the Judgment Debtors' business, despite the fact that Ahava of California has been paid no consideration whatsoever.

164.    Signature respectfully requests that the Court enter a declaratory judgment stating that Ahava of California is an alter ego of the Judgment Debtors.

## TENTH CAUSE OF ACTION

### (Conversion)

165.    Plaintiff repeats and realleges paragraphs 1 through 164 above, as if set forth here in full.

166.    Signature is the owner, and has the right to possession of, all of the Judgment Debtors' personal property now in the possession of any of the defendants.

167.    Signature is the owner, and has the right to possession of, all of the Judgment Debtors' personal property now in the possession of any of the individual defendants,

31

which property was acquired by the individual defendants from any of the corporate defendants.

168.    Defendants' possession of said property is unauthorized.

169.    Defendants have acted to exclude the rights of Signature over said property.

170.    To the extent that said property includes money, it is specifically identifiable as that money derived from the unlawful operations and activities of the corporate defendants, and is subject to an obligation to be returned to Signature.

171.    Signature respectfully requests a judgment against the Judgment Debtors for compensatory damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in favor of plaintiff and against defendant as follows:

a.    rescinding the fraudulent conveyances to Ahava of California and directing that all assets so conveyed be transferred directly to Signature;

b.    declaring that Ahava of California is an alter ego of the Individual Defendants and the Judgment Debtors ;

c.    ordering an accounting of all of the books, records, and other financial information of all of the corporate defendants;

d.    awarding plaintiff compensatory damages in an amount to be determined at trial;

e.     awarding plaintiff punitive damages in the amount of $1 million;

f.     tripling the award of compensatory and punitive damages pursuant to the RICO

        statute;

g.     awarding plaintiff attorneys' fees, costs, and disbursements pursuant to the RICO

        statute and to the extent permitted otherwise by law; and

h.     awarding plaintiff such further relief as the Court deems just and proper.

Dated:   New York, New York
        April 22, 2008

                           HERRICK, FEINSTEIN LLP

                           By: _____
                               Mara B. Levin
                               David Feuerstein
                               John Oleske
                               2 Park Avenue
                               New York, New York 10016
                               Telephone:     (212) 592-1400
                               Facsimile:     (212) 592-1500
                               *Attorneys for Plaintiff Signature Bank*

**VERIFICATION**

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK  )

        Thomas H. Kasulka being duly sworn, deposes and says that:

       1.     I am a Senior Vice President of Signature Bank, the plaintiff in this action.

       2.     I have read the Verified Complaint and the contents thereof are true to my own knowledge, except as to those matters alleged upon information and belief, and as to those matters I believe them to be true.

Sworn to before me this
22ⁿᵈ day of April, 2008

_____
Notary Public

MARIA G. ZICHICHI
Notary Public, State of New York
No. 01ZI6002602
Qualified in New York County
Commission Expires Aug. 31, 2010