Mara B. Levin, Esq.  **ELECTRONICALLY FILED DOCUMENT**
David Feuerstein, Esq.
John Oleske, Esq.
Attorneys for Plaintiff
  Signature Bank
Herrick, Feinstein LLP
2 Park Avenue
New York, New York 10016
Tel: (212) 592-1400
Email: mlevin@herrick.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

SIGNATURE BANK,                                          :
                                                        :
                Plaintiff,                :    08 Civ. 3893 (NRB)
                                                        :
      - against -                                :
                                                        :
AHAVA FOOD CORP. d/b/a NORTH COUNTRY   :
CHEESE CORP., LEWIS COUNTY DAIRY CORP., :
ST. LAWRENCE FOOD CORP. d/b/a PRIMO       :
FOODS, YONI REALTY, LLC, SCHWARTZ AND   :
SONS QUALITY DISTRIBUTORS, INC., MOISE    :
BANAYAN, ANA BANAYAN a/k/a CHANA          :
BANAYAN, REBECCA BANAYAN a/k/a              :
REBECCA BARIMYAN a/k/a REBECCA             :
BANAYAN-LIEBERMAN, FARIBORZ BANAYAN :
a/k/a AARON BANAYAN, RUBEN BEITYAKOV,   :
ARI KATZ, AHAVA OF CALIFORNIA, LLC d/b/a  :
AHAVA NATIONAL FOOD DISTRIBUTOR and    :
NORTH COUNTRY MANUFACTURING, and        :
JOHN DOES 1 through 50,                              :
                                                        :
                Defendants.                :

------------------------------------------------------------ x


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AHAVA OF
CALIFORNIA, LLC'S MOTION FOR ABSTENTION**

# **Table of Contents**

TABEL OF AUTHORITIES ...................................................................................... ii

Preliminary Statement.............................................................................................1

Statement of Facts....................................................................................................2

Background ..............................................................................................................2

AOC Files a Preemptive Action in California to Avoid a Lawsuit in New York. ..........2

The Present Action...................................................................................................4

ARGUMENT ...........................................................................................................5

POINT I  *COLORADO RIVER* ABSTENTION IS UNAVAILABLE BECAUSE
THE CASES ARE NOT PARALLEL AND THE CIRCUMSTANCES ARE
NOT EXCEPTIONAL.......................................................................................6

**A**      The California Action Is Not Concurrent With This Instant Action ...............8

**B**      There Are No Exceptional Circumstances Allowing Abstention ................10

1.    The Lack of any Res Favors Retaining Jurisdiction .................................10
2.    The Federal Forum is Far More Convenient.............................................11
3.    The Potential for Piecemeal Litigation is Minimal...................................12
4.    This Case has Progressed Well Beyond the California Action....................14
5.    California Law Provides Only One Out Of Ten Rules of Decision ...........16
6.    This Court is Better Able to Protect Signature's Federal Rights ................17

POINT II  *YOUNGER*  IS INAPPLICABLE BECAUSE AOC'S STATE-COURT ACTION
DOES NOT ASSERT A FEDERAL CONSTITUTIONAL CHALLENGE TO STATE
ACTION, AND DOES NOT INVOLVE CORE STATE-LAW ISSUES ..................18

CONCLUSION........................................................................................................19

# **Table of Authorities**

## **Cases**

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y.*, 762 F.2d 205 (2d Cir. 1985)......................13

*Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)...........................................................................6

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000)..............................15

*Clark v. Lacy*, 376 F.3d 682 (7th Cir. 2004).............................................................................13

*Dittmer v. County of Suffolk*, 146 F.3d 113 (2d Cir. 1998)......................................................7

*Frequency, LLC v. Clear Channel Bd., Inc.*, 07 Civ. 7785 (PKC),
　　2007 U.S. Dist. LEXIS 84421 (S.D.N.Y. Nov. 15, 2007)...................................................11

*General Star Indem. Co. v. Anheuser-Busch Cos.*, 99-7004,
　　1999 U.S. App. LEXIS 29673 (2d Cir. Nov. 8, 1999)...........................................................6

*Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) .......................................6

*Great American Ins. Co. v. Gross*, 468 F.3d 199 (4th Cir. 2006)..........................................9, 13, 14

*Hanson PLC v. MGM*, 932 F. Supp. 104 (S.D.N.Y. 1996) ...........................................................16

*Harper v. PSC*, 396 F.3d 348 (4th Cir. 2005)..............................................................................7

*Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance, Inc.*,
　　05 CV 7776 (KMK), 2007 U.S. Dist. LEXIS 42725 (S.D.N.Y. June 12, 2007)......................16

*Kellen Co. v. Calphalon Corp.*, 54 F. Supp. 2d 218 (S.D.N.Y. 1999)..........................................15

*Moore v. Sims*, 442 U.S. 415 (1979).........................................................................................19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .................7, 12, 14, 16

*Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17 (2d Cir. 1997).........................................................7

*NBA Props., Inc. v. Salvino, Inc.*, 99 Civ. 11799 (AGS),
　　2000 U.S. Dist. LEXIS 3799 (S.D.N.Y. Mar. 27, 2000) ......................................................12

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986)........................19

*Ontel Prods. v. Project Strategies Corp.*, 899 F. Supp. 1144 (S.D.N.Y. 1995) ...........................15

*Rosenthal v. Vogt*, 229 Cal. App. 3d 69 (2d Dist. 1991) ................................17

*Sheerbonnet, Ltd. v. American Express Bank*, 17 F.3d 46 (2d Cir. 1994) ..................8 , 9

*Stansfield v. Starkey*, 220 Cal. App. 3d 59 (2d Dist. 1990) ........................17

*Sun Life Assur. Co. of Canada v. Gruber*, 05 Civ. 10194 (NRB),
    2006 U.S. Dist. LEXIS 35932 (S.D.N.Y. June 1, 2006)................................6

*Tempco Elec. Heater Corp. v. Omega Eng'g., Inc.*, 819 F.2d 746 (7th Cir. 1987) .........6

*United States v. Morros*, 268 F.3d 695 (9th Cir. 2001) ................................19

*Village of Westfield v. Welch's*, 170 F.3d 116 (2d Cir. 1999)........................7

*Woodford v. Community Action Agency of Greene County, Inc.*,
    239 F.3d 517 (2d Cir. 2001)................................10, 16

*Younger v. Harris*, 401 U.S. 37 (1971)................................18, 19

## **Statutes**

Cal. Code Civ. Proc., § 425.16 (West 2004)................................15

HF 4157873 v.5  #06406/0023 06/02/2008 09:23 PM

## **Preliminary Statement**

This case arises out of a New York plaintiff's attempt to enforce a New York judgment against, what are almost exclusively, New York defendants. California's sole connection to this case is that one of the defendants, Ahava of California, LLC ("AOC"), was organized and is purportedly headquartered there, in the home of its purported owner, defendant Fariborz Banayan ("Fariborz"). Absent that one fact, everything else about the case concerns New York. To wit:

- Signature, a New York Banking Corporation, is enforcing a $9 million judgment from a New York state court.

- All of the other 10 parties are New York residents.

- Virtually every conceivable witness (other than Fariborz) and document is in New York, and the collateral securing Signature's judgment is in at least three different New York counties.

- The relevant agreements between the parties were all executed in New York, and have New York choice-of-law and venue provisions.

- A related bankruptcy proceeding is ongoing in the Northern District of New York.

- Every relevant event occurred in New York—apart from AOC's receipt of stolen money in California.

Under these circumstances, and the relevant case law, abstention is simply inappropriate. Indeed, *Colorado River* abstention is only available where cases are parallel, and where "exceptional circumstances" are present. Here, neither of those elements is met. The actions before this Court and the California court involve divergent issues, and the factors used in evaluating "exceptional circumstances" all favor this Court's retaining jurisdiction.

*Younger* abstention is similarly inapplicable. Indeed, *Younger* requires a federal constitutional challenge to state action, and the presence of a core state-law issue. Such weighty

matters are not at issue here.  Thus, AOC's motion should be denied.

## Statement of Facts

### *Background*

The litigation which gave rise to the present action began in December 2007, when Signature filed a motion for summary judgment in lieu of complaint in New York County Supreme Court (the "Initial Lawsuit").   In essence, Signature's lawsuit sought an order confirming that the Judgment Debtors -- all of whom are New York residents -- owed Signature $9,338,103.90, under the loan documents that were executed in New York and are governed by New York law.

On March 14, 2008, Ahava Foods Corp. ("AFC"), Lewis County Dairy Corp. ("LCD") Yoni Realty, LLC ("Yoni"), St. Lawrence Food Corp. ("St. Lawrence") and Schwartz and Sons Inc. ("S&S") (the foregoing collectively referred to as the "Judgment Debtor Entities") and Moise Banayan ("MB"), were found jointly and severally liable and a judgment was awarded to Signature in the amount of $9,338,962.16, of which the foregoing entities and MB were found jointly and severally liable to Signature in the amount of $7,556,482.37, and those same judgment debtors along with Ana Banayan ("Ana") were found jointly and severally liable to Signature in the amount of $1,782,050.67 (the "Judgment") (Declaration of Mara Levin dated June 2, 2008 ("Levin Decl."), ¶ 3, Exh. 1).

### *AOC Files a Preemptive Action in California to Avoid a Lawsuit in New York.*

Prior to and during the Initial Lawsuit, Signature sent UCC § 9-607 letters to the customers of the Judgment Debtor Entities notifying them that Signature had a perfected security interest and assignment in all of the accounts receivable (past, present, and future) and that Signature was entitled to receive all payments due to the Judgment Debtor Entities and any other entity believed by such customer to be affiliated with any of them including Ahava, SLF, LCD,

2

Yoni or Schwartz including, without limitation, AOC and its d/b/a <u>Ahava National Food Distribution</u>.

Based entirely on these letters sent in November and December of 2007, AOC initiated its litigation (the "California Action") in the Superior Court of California on March 17, 2008, just three days after Signature was awarded its Judgment. In essence, AOC alleged that Signature tortiously interfered with AOC's business operations by sending the 9-607 letters to the Judgment Debtor Entities' customers, claiming that some of the recipients were actually customers of AOC. AOC further alleges in the California Action that it has been "damaged" in an amount over $10 million, yet AOC's own complaint identifies only $6,000 diverted in receivables allegedly from AOC as a result of the 9-607 letters. (Levin Decl., ¶ 4, Exh. 2).

At the time AOC initiated the California Action, it knew full well that Signature was preparing to sue AOC as part of the efforts to satisfy its judgment against the Judgment Debtors. Signature, in fact, repeatedly told the Judgment Debtors that further legal action, including action against AOC, was inevitable. For example, in a February 3, 2008 email to Signature, Moise Banayan admitted that AOC knew that Signature was "eyeing AOC as a source to recuperate [sic] its potential loss." (Levin Decl., ¶ 5, Exh. 3). And in a March 8, 2008 email to Signature, the Banayan brothers' mother, speaking on behalf of AOC, stated that "[t]he current situation between us will eventually lead you to sue my company."[1] (Levin Decl. ¶ 6, Exh. 4).

Signature has answered the California Complaint and has moved to dismiss the Action pursuant to California's Anti-SLAPP statute. Signature's motion stays discovery in the

---

[1] AOC has not disclosed what stake, if any, the Banayans' mother has in AOC, despite her apparent authority to speak for the company.

HF 4157873 v.5 #06406/0023 06/02/2008 09:23 PM

California Action until such time that the Court resolves the motion (at which point, either party

can take an immediate appeal, which will further stay discovery).[2]

***The Present Action***

On April 4, 2008, Signature filed the instant action in New York state court, seeking an

order (i) declaring AOC as the alter ego of the Judgment Debtors; and/or (ii) requiring AOC to

return the assets that were fraudulently transferred to it.  Signature included 10 exhibits with its

Complaint, almost all of which Signature obtained through its New York counsel's independent

investigation.  On the same day, Signature moved by order to show cause for an order enjoining

AOC from transferring assets outside the ordinary course of business.  After hearing argument

from both parties' counsel, Justice Freedman granted Signature's requested relief and ordered

AOC to produce is books and records to Signature.  AOC did not do so.

Less than two weeks later, the state court held a teleconference with all counsel, at which

time the state court directed AOC to produce its organizational documents no later than April 22,

2008, and its accounts payable and accounts receivable ledgers no later than April 30, 2008.

AOC complied with the first part of the Court's order but has yet to fully produce documents

reflecting its receivables and payables.

On April 24, 2008 Signature amended its state court complaint to include additional

individual defendants (such as Reuben Betyakov) and claims for violations of RICO (among

other things).  This time Signature produced an additional 16 supporting exhibits to support its

claims that AOC was an alter ego and/or fraudulent transferee of the Judgment Debtors.  At that

time, Signature also moved, again by order to show cause, for an order (i) compelling defendants

---

[2] Before Signature had moved under California's Anti-SLAPP statute, AOC moved the California court for a TRO
enjoining Signature from contacting AOC's customers.  The only documents (apart from affidavits) annexed to the
TRO application were the 9-607 letters from Signature to the Judgment Debtors' customers, and letters from AOC's
lenders stating that AOC's credit was being cut off.  The California court denied AOC's request for a TRO, and
scheduled a hearing for June 6, 2008 on AOC's motion for a preliminary injunction seeking the same relief.

HF 4157873 v.5  #06406/0023 06/02/2008 09:23 PM

to give Signature access to the Judgment Debtors' collateral for inspection as provided for in the loan and forbearance agreements; and (ii) for the appointment of a temporary receiver. On the strength of Signature's evidence, the Court granted Signature's request to inspect the collateral and scheduled a May 1, 2008 hearing to determine whether to appoint a receiver.

Despite the Court's order, the very next day, AOC precluded Signature from accessing the Brooklyn premises where AFC's and S&S's collateral is located. (Levin, ¶ 7, Exh. 5).

On the same day, two additional events occurred. First, AOC removed the state court action to this Court. In doing so, AOC forced Signature to file a separate receivership motion in this action, delaying consideration of the application originally brought in the state court by more than a month. AOC also avoided having to produce the accounts payable and accounts receivable documents by the April 30, 2008 deadline set by the state court. This Court, however, granted expedited discovery, including the immediate production of the purported "triple-net lease" and the deposition of 5 defense witnesses. In addition, Signature has served discovery requests on both AOC and the Judgment Debtors and has received documents in response to those requests.

Second, Moise Banayan filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of New York. In his petition, Banayan claims both that the Judgment Debtors are defunct, and that the Judgment Debtors are his sole source of income. (Levin Decl., ¶ 8, Exh. 6). Along those lines, Banayan tried, and failed, to get a §105 injunction in the Bankruptcy proceeding staying all action against the other Judgment Debtors, which he claims are his sole source of income.

## ARGUMENT

AOC's motion is based on two federal abstention doctrines, namely *Colorado River* and *Younger*. Neither, however, is remotely applicable in this case. AOC's preemptive California

lawsuit, and its protests of inconvenience, cannot overcome the vital connection between this case and this venue. For these reasons, and the reasons discussed below, AOC's motion should be denied.

**POINT I**

***COLORADO RIVER* ABSTENTION IS UNAVAILABLE BECAUSE THE CASES ARE NOT PARALLEL AND THE CIRCUMSTANCES ARE NOT EXCEPTIONAL**

"Ordinarily, federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction, which should only be abdicated in favor of the state courts in 'exceptional circumstances.'" *Sun Life Assur. Co. of Canada v. Gruber*, 05 Civ. 10194 (NRB), 2006 U.S. Dist. LEXIS 35932, at *6 (S.D.N.Y. June 1, 2006) (*quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976)).[3] Such "exceptional circumstances" include:

> (1) where a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law;

> (2) where there are difficult questions of state law bearing on important state policy problems, whose importance transcends the result in the case at bar; and

> (3) where federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings.

424 U.S. at 814-15.

---

[3] While AOC argues for the application of *Colorado River*, its cases -- namely *Tempco Elec. Heater Corp. v. Omega Eng'g., Inc.*, 819 F.2d 746, 747 (7th Cir. 1987) and *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) -- stand for the rule set out in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942), which concerns abstention for declaratory judgment actions. *Brillhart* abstention, however, is not available here because the declaratory judgment claim is accompanied by claims for money damages. *General Star Indem. Co. v. Anheuser-Busch Cos.*, 99-7004, 1999 U.S. App. LEXIS 29673, at *2 (2d Cir. Nov. 8, 1999) ("It is well-established...that a district court may not invoke *Brillhart* abstention if the suit before it involves claims for damages as well as a request for declaratory relief.")

6

None of these categories applies here.  In fact, AOC does not even argue that it is entitled to abstention on any of these grounds, but rather argues for the application of an adjunct rule of *Colorado River*, which permits abstention where the continuation of concurrent state and federal court proceedings would undermine "wise judicial administration." 424 U.S. at 818; (Opp. Br. at 7).  Conditions under which this relief will be granted are "considerably more limited than the [other three] circumstances appropriate for abstention." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983).

This variety of *Colorado River* abstention requires a two-part showing.  First, AOC must show, as a prerequisite, that this case and the California Action are, in fact, concurrent proceedings. *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) ("a finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River"); *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997)("Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same").  Second, if AOC proves that the cases are concurrent, it must then prevail on a six-factor test measuring "exceptional circumstances,"  which is "heavily weighted in favor of the exercise of [federal] jurisdiction." *Moses Cone*, 460 U.S. at 16.

Here, AOC has failed to meet either requirement.  In fact, AOC cannot even satisfy the threshold matter of concurrence since the two cases involve mostly different parties, properties and issues.  But even if AOC could establish concurrence, it would fail on the six-factor test for "exceptional circumstances", because (i) the California Action was "anticipatory," (ii) any connection to California is far too tenuous to overcome the more substantial ties with New York, and (iii) this Court is perfectly capable of interpreting California's version of common-law alter-ego principles.

7

### A.    The California Action Is Not Concurrent With This Instant Action

In its attempt to satisfy the threshold issue of concurrence, AOC argues that the California Action and this case "involve identical factual and legal issues." (Moving Br. at 6.) Specifically, AOC argues that both cases will require the trier of fact to determine:

      (1)     Whether AOC is an alter ego of the Judgment Debtors;

      (2)     Whether the Judgment Debtors fraudulently conveyed assets to AOC; and

      (3)     Whether Signature has an interest in AOC's assets.

(*Id.*)

AOC, however, simply ignores the myriad factors that would prevent a finding of concurrence. Indeed, as demonstrated by the table below, the two cases are hardly concurrent:

|  | Common to Both Cases | Present in New York Federal Action Only | |
|---|---|---|---|
| **Parties** | AOC<br>Fariborz Banayan<br>Signature | AFC<br>Lewis County<br>St. Lawrence<br>Schwartz & Sons<br>Yoni | Moise Banayan<br>Ana Banayan<br>Rachel Banayan<br>Ruben Bietyakov<br>Ari Katz |
| **Property** | Accounts Receivable from Judgment Debtors' Customers | Brooklyn Depot<br>Lowville Dairy<br>Ogdenburg Dairy | Equipment<br>Trademarks<br>Goodwill |
| **Issues** | Alter Ego*<br>Fraudulent Conveyance*<br>Signature Interest in A/R*<br><br>* as to AOC only | RICO<br>Fraud<br>Conversion<br>Alter Ego*<br>Fraudulent Conveyance*<br><br>* as to defendants other than AOC | |

Under circumstances such as these, courts have consistently refused to find concurrence. For example, in *Sheerbonnet, Ltd. v. American Express Bank*, 17 F.3d 46, 49-50 (2d Cir. 1994), the district court had abstained in a case where a creditor of BCCI sued American Express for receiving BCCI funds when it knew that BCCI's assets were frozen in a state liquidation proceeding. The Second Circuit, however, reversed, holding that "[s]imilarity of parties is not

8

the same as identity of parties," pointing to the fact that key parties were absent from one of the lawsuits. *Id.* at 50 (*quoting Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 603 (2d Cir. 1998)); *see also Great American Ins. Co. v. Gross*, 468 F.3d 199, 208-209 (4th Cir. 2006)(holding that abstention was not appropriate because the key parties were missing from the state court action).[4] *Id.*

Similarly, in *Alliance*, the court found that a divergence of issues rendered the federal and state actions non-parallel. 854 F.2d at 603. There, the federal case raised a federal-law issue, while the state case raised state-law issues that could, theoretically, impact the federal case. 854 F.2d at 603. Despite this fact, the Second Circuit held that abstention was inappropriate since "[w]hile there may be some overlap of subject matter, it is not sufficient to make these actions concurrent." *Id.; see also Great American*, 468 F.3d at 208-209 (holding abstention to be inappropriate because a fraud claim in one case was no present in the other).

The overlap between the cases here is at least as divergent as that in *Sheerbonnet, Alliance* and *Great American*. While Signature and AOC are in both actions, the federal action here includes 10 parties that the California Action does not, including all of the Judgment Debtors. It also involves the Judgment Debtors' three industrial buildings and various personal property located in three different New York jurisdictions. And while this case involves allegations of RICO violations, fraudulent conveyance, and conversion against all of the defendants, the California Action is limited solely to the propriety of UCC § 9-607 letters sent by Signature to the Judgment Debtors' customers. Thus, the Court should find that this case and the California Action are not concurrent, and that abstention is therefore unavailable.

---

[4] AOC erroneously cites *Great American* not for the concurrence analysis, but under the "piecemeal litigation" factor of the "exceptional circumstances" analysis. (Moving Br. at 8). *See* Point I(B)(3), below.

HF 4157873 v.5 #06406/0023 06/02/2008 09:23 PM

**B.**    **There Are No Exceptional Circumstances Allowing Abstention**

Even if the California Action were concurrent with this case (it is not) AOC still cannot

satisfy the six-factor test for "exceptional circumstances", which examines:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction;
>
> (2) whether the federal forum is less inconvenient than the other for the parties;
>
> (3) whether staying or dismissing the federal action will avoid piecemeal litigation;
>
> (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other;
>
> (5) whether federal law provides the rule of decision; and
>
> (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Community Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)
(*citing Colorado River*, 424 U.S. at 818) (*also citing Moses Cone*, 460 U.S. at 22).

In fact, all six of these factors weigh in favor of retaining jurisdiction in this Court.  Thus,

AOC's motion should be denied.

1.    The Lack of any Res Favors Retaining Jurisdiction

Neither this nor the California Action is an *in rem* proceeding, and therefore neither court

has acquired jurisdiction over any res by virtue of the commencement of the respective actions.

*See Village of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (holding that proceeding

was in *personam* since case involved user charges to fund water treatment plant and court had

not acquired jurisdiction over funds or plant).  This factor, therefore, weighs against abstention,

because "the absence of a res 'points toward exercise of federal jurisdiction.'"  *Id.* (*quoting De

Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989)) (*citing Bethlehem Contracting Co. v.

Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir. 1986)).

10

Nevertheless, AOC argues that it prevails on this factor due to the presence in California of Fariborz Banayan's membership interest in AOC. But Fariborz Banayan's membership interest is not at issue in this or the California Action. Indeed, neither Signature's claims in this action nor its defenses in the California action seek an order rescinding Fariborz Banayan's membership interest in AOC.[5] Neither court, therefore, has *in rem* jurisdiction over any of the property. Thus, this factor favors retention of the case here.

2.    The Federal Forum is Far More Convenient

AOC argues that this Court is inconvenient to AOC and its purported owner, Fariborz Banayan, who lives in Venice, California. AOC also cryptically states that this forum will be inconvenient for the California defendants that will be added, even though AOC does not identify who those defendants will be, or even the basis for their prospective inclusion in the California Action. (Moving Br. at 7-8.)

AOC, however, cannot legitimately claim that New York is inconvenient given its own conduct. Indeed, since at least February 2008, AOC (and by extension, Fariborz Banayan) have been operating a New York-based business generating a purported $18 million in sales to customers located, for the most part, in and around New York. (Levin Decl. ¶ 9, Exh. 7). If AOC and Fariborz Banayan can run a major enterprise whose manufacturing and operating facilities are located in three separate New York counties, then surely they can manage to appear in this Court without significant disruption. *See Frequency, LLC v. Clear Channel Bd., Inc.*, 07 Civ. 7785 (PKC), 2007 U.S. Dist. LEXIS 84421, at *6 (S.D.N.Y. Nov. 15, 2007) (finding New York federal forum convenient to Texas company doing extensive business in New York).

---

[5] That is not to say that Signature accepts as true AOC's claims that Fariborz Banayan is the sole owner/member of AOC. To the contrary, the documentary evidence undermines such a claim. But Signature has not sought to unwind whatever transaction the Banayans entered into to avoid the Judgment.

11

Moreover, AOC's and Fariborz Banayan's interests are not the only ones to be considered. Signature is a New York bank with no presence whatsoever in California. And all the defendants (other than AOC and Fariborz Banayan) are residents of New York. Moreover, as noted above, almost all of the parties, witnesses, documents[6], and property involved are located in New York (leaving aside the phantom California defendants mentioned by AOC), meaning that California would be a far more inconvenient forum than New York to litigate this action. *See NBA Props., Inc. v. Salvino, Inc.*, 99 Civ. 11799 (AGS), 2000 U.S. Dist. LEXIS 3799, at *25 (S.D.N.Y. Mar. 27, 2000) (where California party to New York federal case alleged inconvenience, based on unnamed, prospective California party witnesses, court held that countervailing presence of five New York party witnesses made New York the most convenient forum). Thus, this factor also weighs against abstention.

### 3. The Potential for Piecemeal Litigation is Minimal

AOC argues that avoiding piecemeal litigation is the "most important factor" in granting dismissal under *Colorado River*, citing *Moses Cone*, 460 U.S. at 16. But *Moses Cone* only identified this factor as having been the most important consideration under the particular circumstances of *Colorado River*, where parallel litigation threatened the uniform interpretation and application of federal water rights statutes. *Id. Moses Cone*, in fact, warned against a "mechanical" application of the factors, saying that "[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Id.*

In fact, some duplication among litigations is inevitable in any abstention case that reaches the six-factor test because concurrence between the cases has already been established. (*See supra* at 7-10.) The real question, then, is not whether there is *any* overlap of parties or issues, but whether the overlap is so significant that the federal court should take the

---

[6] Notably, AOC's document production was made entirely from New York and Fariborz Banayan was in New York

HF 4157873 v.5 #06406/0023 06/02/2008 09:23 PM

extraordinary step of abstaining. For all the reasons discussed thus far -- including the lack of overlap between the parties, issues and properties -- such circumstances do not exist here.

The three cases as relied upon by AOC do not alter this analysis. *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y.*, 762 F.2d 205, 211 (2d Cir. 1985), for example, was a consolidated proceeding of 35 lawsuits naming 12 defendants as liable for a water main break and subsequent blackout in New York City's Garment Center neighborhood. *Id.* at 207-208. The federal action involved only three of the twelve defendants in the state-court suit. *Id.* at 208. As a result, the court held that the avoidance of piecemeal litigation was served because the entire universe of parties and claims were present in the state court proceeding. *Id.* at 211. Here, the opposite is true: The state court proceeding -- i.e., the California Action -- only encompasses a small subset of the parties and issues, and therefore, can only afford partial relief. Thus, *Arkwright-Boston* is simply not applicable.

Similarly, *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004) and *Great American*, 468 F.3d at 207-209 -- two non-controlling cases -- did not analyze the piecemeal-litigation factor in the manner suggested by AOC. Rather, they discussed the threshold concurrence issue discussed above. *Clark,* 376 F.3d at 684 (analyzing "parallel cases" issue); *Great American*, 468 F.3d at 208 (same). In any case, even if they applied here, they would only further undermine AOC's claims. *Clark,* for example, involved two derivative lawsuits alleging the same wrongdoing by the same corporate officers, which created an almost total overlap between the cases, allowing abstention. *Id.* at 686. Such similarity, however, does not exist here and, thus, *Clark* is inapplicable. Likewise, *Great American* involved two separate insurance cases, only one of which required the plaintiff to prove fraud by the policyholder. 468 F.3d at 209. Thus, the court

---

to ensure that it was run smoothly.

HF 4157873 v.5 #06406/0023 06/02/2008 09:23 PM

held that the divergence in issues precluded abstention. *Id.* Thus, *Great American* can hardly support AOC's claim that abstention is appropriate here.

4.    This Case has Progressed Well Beyond the California Action

AOC claims that the fourth factor in the Colorado River analysis favors abstention. But the fact that AOC filed the California Action first, Signature answered that complaint, and AOC served discovery requests on Signature, does not suffice. Indeed, the question under *Colorado River* is not who did what first but rather "how much progress has been made in the two actions." *Moses Cone*, 460 U.S. at 21. In other words, this factor is measured not by speed to the courthouse; but rather, which case is far more developed. Under this measurement, abstention is plainly inappropriate.

First, the pleadings and motion practice in this case are certainly farther along than in the California Action. Indeed, this case has already involved two state-court complaints, two state-court TROs, multiple telephonic and in-person hearings with the state court, removal to this Court, the extension of the TROs by this Court (which was preceded by lengthy oral argument) and the scheduling of a preliminary injunction hearing. No order—aside from the California court's denial of AOC's TRO application—has issued in the California Action.

Second, discovery is also farther along in this case than in the California Action. For example, AOC has already produced its documents in response to Signature's demands, and has produced Fariborz Banayan for deposition. Moreover, Moise Banayan's deposition is scheduled to take place on June 6, 2008, Rob Bloch's on June 12, 2008 and Michael Menlo's on June 13, 2008. Thus, AOC's statement that "no discovery has been propounded in this case." (Moving Br. at 8), is simply false.

By contrast, after service of Signature's Answer in the California Action, the case lie dormant until AOC moved for a TRO which was denied within a day or two. Discovery in the

14

California Action is automatically stayed because Signature has moved under California's Anti-SLAPP statute to dismiss that action. (*See* Cal. Code Civ. Proc., § 425.16). Even if the motion is ultimately denied, the case will make no substantive progress in the interim.

Finally, the tactical nature of AOC's commencement of the California Action provides an independent basis to disregard the fact that it was the first-filed case as this Court explained in *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 557 (S.D.N.Y. 2000):

> An improper anticipatory filing is "one made under the apparent threat of a presumed adversary filing the mirror image of that suit" in another court. It is improper for a party to launch a preemptive strike by racing to the courthouse in his preferred forum before his adversary has a chance to file their action in the forum of their choice, and such a party should not benefit from the first-filed rule. An apparent threat of litigation can arise where there is an overt statement to that effect or where the parties have been engaged in negotiations which have broken down.
>
> Courts have focused in particular on situations where there is a threat of litigation followed by settlement talks, since such talks would reasonably lull the party who would otherwise have pursued legal action into not doing so.

*Quoting Ontel Prods. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995)

Here, AOC admitted, only days before filing the California Action, that it knew legal action against it by Signature was imminent. (Levin Decl. ¶ 3, Exh. 1). Indeed, just three days prior to commencement of the California Action, Signature had secured the over $9 million Judgment. (Levin Decl. ¶ 3, Exh. 1). At the same time, AOC knew that the Judgment Debtors were lulling Signature into inaction with the prospect of a "white knight" buyer for the business. (Levin Decl. ¶ 7, Exh. 5) As such, the first-filed preference has no application. *See also Kellen Co. v. Calphalon Corp.*, 54 F. Supp. 2d 218, 223 (S.D.N.Y. 1999) (disregarding plaintiff's first-filed action where filing was made "under questionable circumstances" and "smack[ed] of

15

forum-shopping"); *Hanson PLC v. MGM*, 932 F. Supp. 104, 107 (S.D.N.Y. 1996) (no preference where first-filer lulled adversary into inaction through settlement negotiations).[7]

5.    <u>California Law Provides Only One Out Of Ten Rules of Decision</u>

According to AOC, the only issue to be resolved in these litigations is whether AOC is an alter ego of the Judgment Debtors, which AOC says should be decided under California law. But more questions in this case turn on federal or New York law than on California law. Thus, this factor also favors against abstention.

For example, five of Signature's ten claims are under New York statutes or New York common law. (Amended Verified Complaint ¶¶ 145-71). Four are for violations of RICO, which require the application not only of that federal statute, but also of the six underlying federal criminal statutes Signature cites in alleging the requisite predicate acts. (Amended Verified Complaint ¶¶ 110-44). The presence of these federal-law claims alongside the state-law claims strongly favors retention in federal court. *See Woodford*, 239 F.3d at 523 ("Even where there are some state-law issues, 'the presence of federal-law issues must always be a major consideration weighing against surrender.'") (*quoting Moses Cone*, 460 U.S. at 26)).

Moreover, the only issue of California law -- i.e., whether AOC is an alter ego of the Judgment Debtors -- hardly justifies abstention since the law is virtually identical to that of New York. *See Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance, Inc.*, 05 CV 7776 (KMK), 2007 U.S. Dist. LEXIS 42725, at *27 n.8 (S.D.N.Y. June 12, 2007) (alter ego analysis yields same results under both California and New York law). Thus, this factor also favors this Court's retention of the case.

---

[7] AOC's California complaint itself further shows that the California Action was simply an attempt to avoid litigating in New York. Indeed, AOC filed the suit even though it knew it had only $6,000 of enumerated damages.

16

6.     This Court is Better Able to Protect Signature's Federal Rights

AOC claims that "there is no reason to believe that a California state court will not protect the Bank's interests," and cites that court's denial of AOC's request for a TRO as evidence of that fact. (Moving Br. at 9.) But the issue is not whether the California court will protect Signature when AOC makes baseless applications for preliminary relief. Rather, the question is whether the California court is equipped to handle Signature's federal claims in a manner comparable to this Court in the event those claims were to be litigated in California.

While this Court is well-versed in all of the legal issues in this case, it is unlikely the California state court has had the same opportunity to interpret either civil RICO or the underlying predicate crimes. In fact, it appears that there are only 21 published cases in which the Supreme Court of California or the California Courts of Appeal even mentioned civil RICO.[8] Of those 21, only two are from the Second Appellate District, to which an appeal in the California Action would be taken, and the most recent of those is 17 years old.

Moreover, in those two cases, the California courts were able to dismiss the civil RICO claims without needing to analyze federal statutes in any depth, because the plaintiffs' allegations in those cases were so glaringly defective. *See Rosenthal v. Vogt*, 229 Cal. App. 3d 69, 72 (2d Dist. 1991) (dismissing disbarred attorney's claim that California Bar Association was operated as a RICO enterprise); *Stansfield v. Starkey*, 220 Cal. App. 3d 59, 78 (2d Dist. 1990) (dismissing RICO claim based on extortion predicate, where there was no allegation that the plaintiff ever gave anything to the defendant). This is not to say that the California court would be unable to apply these federal laws in a more developed way than evidenced in *Rosenthal* and *Stansfield*. Rather, Signature respectfully suggests only that this Court, and indeed the Second Circuit as a whole, has more familiarity and expertise in dealing with the RICO statute, thus

17

making it more capable of protecting Signature's interests and properly adjudicating the rights of all parties.

Put simply, even if this case were parallel to the California Action, there would be no basis for abstention under *Colorado River's* six-factor test.   AOC's conclusory assertions notwithstanding, every one of the factors weighs heavily in favor of this Court retaining control of this dispute.  In fact, aside from AOC's ephemeral connection to its headquarters in Fariborz Banayan's house, everything about this case is in New York -- to wit, a New York court's judgment on a New York bank's loan to a New York business, which is run by New York employees, and which sells to New York customers.  Indeed, if this case represents "exceptional circumstances" permitting abstention, then the phrase has lost all meaning.  AOC's motion, therefore, should be denied.

## POINT II

### *YOUNGER* IS INAPPLICABLE BECAUSE AOC'S STATE-COURT ACTION DOES NOT ASSERT A FEDERAL CONSTITUTIONAL CHALLENGE TO STATE ACTION, AND DOES NOT INVOLVE CORE STATE-LAW ISSUES

In what appears to be an afterthought, AOC argues that the Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971).  *Younger*, however, is inapplicable, since that doctrine is intended to preserve the right of state courts to judge the constitutionality of their own state's actions. *Id*. at 43-44.  Indeed, *Younger* abstention requires two circumstances that are not present here, namely, a federal constitutional challenge to an action by a state, and a core state-law issue. *Id*. at 44.

That Signature has not raised a federal constitutional challenge to any action by California is self-evident.  For that reason alone, *Younger* does not apply, and AOC's motion for abstention under it should be denied.

---

[8] Lexis-Nexis search string: "civil RICO" or "18 U.S.C. 1964" in "California State Cases, Combined" database.

HF 4157873 v.5  #06406/0023 06/02/2008 09:23 PM

But even if Signature were challenging the constitutionality of California's alter-ego law, *Younger's* requirement of a core state-law issue would still not be met. Indeed, the cases AOC cites construing *Younger* all applied that doctrine to core state-law issues far weightier than the routine interpretation of common-law alter ego principles at issue here. *See Moore v. Sims*, 442 U.S. 415, 418 (1979) (constitutional challenge to Texas child-abuse statutes); *United States v. Morros*, 268 F.3d 695, 698-99 (9th Cir. 2001) (federal government's constitutional challenge to Nevada statute barring U.S. Department of Energy from dumping radioactive waste at Yucca Mountain facility); *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 621-22 (1986) (private religious school's constitutional challenge to Ohio civil rights statute); *Harper v. PSC*, 396 F.3d 348, 350 (4th Cir. 2005) (commerce clause challenge to West Virginia administrative decision barring out-of-state waste disposal services). In short, *Younger* does not apply. Thus, for this reason too, AOC's motion should be denied.

## CONCLUSION

Federal abstention is reserved for parallel proceedings, exceptional circumstances, constitutional challenges, and core state-law issues. None are present in this case. The Court should deny AOC's motion for abstention.

Dated:   New York, New York
       June 2, 2008

                      HERRICK, FEINSTEIN LLP

                      By:_____

                          Mara B. Levin
                          David Feuerstein
                          John Oleske
                      2 Park Avenue
                      New York, New York 10016
                      Telephone:    (212) 592-1400
                      Facsimile:    (212) 592-1500
                      Attorneys for Plaintiff Signature Bank

HF 4157873 v.5 #06406/0023 06/02/2008 09:23 PM