ROBERT W. HIRSH (102731)
ROBERT W. HIRSH & ASSOCIATES
8383 Wilshire Boulevard, Suite 510
Beverly Hills, California 90211
Telephone: 310-274-8507; Facsimile: 310-275-4050

SETH EISENBERGER (SE-6769)
108 Airport Executive Park
Nanuet, New York 10954
Telephone: 845-426-3400; Facsimile: 845-426-3401

Attorneys for Defendant, Counter-claimant and Cross-claimant Ahava of California, LLC

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
SIGNATURE BANK,                                                          :
                                                                         :
                            Plaintiff,                                   :
                                                                         :
       - against -                                                       : 08 Civ. 3893 (NRB)(MHD)
                                                                         :
AHAVA FOOD CORP., LEWIS COUNTY DAIRY                                     :
CORP., ST. LAWRENCE FOOD CORP. d/b/a PRIMO                               :
FOODS, YONI REALTY, LLC, SCHWARTZ AND                                    :
SONS QUALITY DISTRIBUTORS, INC., MOISE                                   :
BANAYAN, ANA BANAYAN a/k/a CHANA                                         :
BANAYAN, REBECCA BANAYAN a/k/a REBECCA                                   :
BARIMYAN a/k/a REBECCA BANAYAN-                                          :
LIEBERMAN, FARIBORZ BANAYAN a/k/a                                        :
AARON BANAYAN, RUBEN BEITYAKOV,                                          :
ARI KATZ, AHAVA OF CALIFORNIA, LLC d/b/a                                 :
AHAVA NATIONAL FOOD DISTRIBUTOR                                          :
and NORTH COUNTRY MANUFACTURING, and                                     :
JOHN DOE COMPANIES 1 through 10                                          :
                                                                         :
                            Defendants.                                  :
-------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT, COUNTER-CLAIMANT AND CROSS-CLAIMANT
<u>AHAVA OF CALIFORNIA LLC'S MOTION FOR SANCTIONS</u>**

{015637}

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....... ii

I. INTRODUCTION ....... 1

II. FACTUAL BACKGROUND ....... 4

III. SANCTIONS SHOULD BE AWARDED AGAINST THE BANK AND ITS ATTORNEYS PURSUANT TO THE COURT'S INHERENT POWER ....... 14

IV. SANCTIONS SHOULD BE AWARDED AGAINST THE BANK'S ATTORNEYS PURSUANT TO 28 USC SECTION 1927 ....... 15

V. CONCLUSION ....... 17

# TABLE OF AUTHORITIES

**Cases**

B.K.B. v. Maui Police Dept., County of Maui,
 276 F. 3d 1091 (9th Cir. 2002) ............................................................................................... 16

Chambers v. NASCO, Inc.,
 501 U.S. 32, 43 (1991) ............................................................................................................ 14

Edwards v. General Motors Corp.,
 153 F. 3d 242 (1998) ............................................................................................................... 15

In re Keegan Management Co. Securities Litigation,
 78 F. 3d 431 (9th Cir. 1996) ................................................................................................... 16

Lipsig v. National Student Marketing Corp.,
 663 F. 2d 178, 181 (D.C. Cir. 1980) ...................................................................................... 14

Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.,
 210 F. 3d 1112 (9th Cir. 2000) ............................................................................................... 15

Roadway Express, Inc. v. Piper,
 447 U.S. 752 (1980) ................................................................................................................ 14

Salstrom v. Citicorp Credit Corp. Services, Inc.,
 74 F. 3d 183 (9th Cir. 1996) ................................................................................................... 16

Schwartz v. Milion Air, Inc.,
 341 F. 3d 1220 (11th Cir. 2003) ............................................................................................. 15

**Statutes**

28 USC Section 1927 .................................................................................................... 3, 13, 14

I.

INTRODUCTION

Defendant, counter-claimant, and cross-claimant Ahava of California, LLC ("Ahava CA") respectfully submits this memorandum of law in support of its motion for sanctions against plaintiff and counter-defendant Signature Bank ("the Bank") and its attorneys Herrick Feinstein, LLP, Mara Levin, David Feuerstein, and John Oleske (collectively ABank's Attorneys"). Ahava CA should be reimbursed for the small fortune it spent in attorney's fees and costs in opposing the Bank's meritless Order to Show Cause for a Preliminary Injunction and for Appointment of Receiver ("the Motion"). The Court scheduled the Motion for a hearing and ordered a rigorous expedited discovery schedule based upon the Bank's and the Bank's Attorneys' repeated misrepresentations that it had Ahard evidence" that Ahava CA had impaired property in which the Bank had a security interest ("the Collateral"). The security interest had been granted to the Bank by third parties, i.e. the Judgment Debtors[*] and not Ahava CA. The Bank never had any agreement or security interest in Ahava CA's property.

The Bank's representations were not true: the Bank never had any evidence that Ahava CA impaired the Collateral.

From April through June 2008, there was extensive motion practice before Judge Buchwald and Magistrate Judge Dolinger related to the Motion, during which Ahava CA's

---

\*      Defendants Ahava Food Corp, Lewis County Dairy Corp., St. Lawrence Food Corp., Yoni Realty, LLC, Moise Banayan (AMoise@), Ana Banayan, and Schwartz and Sons, Inc. (collectively Athe Judgment Debtors@).

\*\*     Because the Bank failed to copy Ahava CA's documents during the first three inspections, Ahava CA produced its documents for inspection and copying four separate times.

1

counsel:

    a.    argued that there was no evidence that Ahava CA had impaired the Collateral, and

    b.    invited an offer of proof from the Bank's Attorneys to avoid Ahava CA from having to incur significant attorney's fees and costs relating to defense of the Motion, including preparing opposition and engaging in rigorous expedited discovery.

The Bank refused to make an offer of proof. In the end, discovery validated Ahava CA's position. The Bank's representations to the court were not true; the Bank was unable to produce any evidence of impairment of Collateral.

From on or about April 23, 2008 through or about June 11, 2008, Ahava CA's attorneys worked Aaround the clock" to defend against the Motion, which included:

    a.    preparing a very lengthy and detailed opposition to the Motion;

    b.    complying with the Court's rigorous, omnibus, expedited discovery schedule, including taking and defending depositions and producing thousands of documents during four separate document productions**; and

    c.    defending against letter motions submitted by the Bank on almost a daily basis which, in large part, the Bank falsely tried to inflame the Court against Ahava CA by misbranding it as uncooperative in discovery, when exactly the opposite was true, i.e. Ahava CA fully cooperated, and the Bank disobeyed numerous discovery orders as set forth below.

The Motion also wrecked havoc upon Ahava CA's sole member, Fariborz Banayan ("Fariborz"), who flew to New York to insure that the court ordered document production was properly handled. The Bank disobeyed at least four discovery orders issued by Magistrate Judge Dolinger. On June 11, 2008, after the Bank's then latest breach of a discovery order, the Bank

withdrew the Motion. In withdrawing the Motion, the Bank's counsel admitted that the Bank had violated yet another order. The Bank's lack of evidence to prove impairment of the Collateral was an underlying reason for the Motion's withdrawal.

Pursuant to the court's inherent power to sanction bad faith conduct and 28 USC Section 1927, the Bank and its counsel should be ordered to reimburse Ahava CA for all of its attorney's fees and costs relating to the Motion for any of the following reasons:

    a.    the Bank brought and maintained the Motion without possessing any evidence that Ahava CA impaired the Collateral. The Bank repeatedly misrepresented to Judge Buchwald and Magistrate Judge Dolinger that the Motion's requested relief was necessary because it had Ahard evidence" that Ahava CA had impaired the Collateral. The Bank never had any such evidence; and

    b.    the Bank violated multiple discovery orders, which led to its being forced to dismiss the Motion.

## II.

## FACTUAL BACKGROUND

On or about April 23, 2008, before this case was removed, the Bank filed the Motion (which was styled Order to Show Cause) in the New York Supreme Court, which, among other things, sought appointment of a receiver to take control of Ahava CA and for a preliminary injunction. A copy of the Order to Show Cause is attached to the Hirsch Declaration as Exhibit "A."

During April 25-28, 2008, there were multiple communications between counsel and the court, in which, among other things, counsel for the Bank, i.e. Mara Levin ("Levin"), David

3

Feurstein ("Feurstein") and/or John Oleske ("Oleske") repeatedly represented that the Bank was entitled to a receiver because it had ʌhard evidence" that Ahava CA was impairing collateral in which the Bank had a security interest as a result of loan documents executed by the Judgment Debtors (but not Ahava CA) in favor of the Bank.

On April 25, 2008, Levin faxed Judge Buchwald a letter, which states, in pertinent part

> ...there is a real and imminent threat that defendants [which includes Ahava CA]...will continue to direct or secrete [the] Collateral. In fact, our client [the Bank] has heard from market participants that Ahava CA is now offering discounts to customers that pay in cash.

A copy of the April 25, 2008 letter is attached to the Hirsch Declaration as Exhibit "B."

Levin's statements to the court were not true and have never been proven. No evidence exists nor was any proffered by the Bank at any time that Ahava CA:

    a.    "directed or secreted" any asset in which the Bank has and/or had a security interest to any third person; or

    b.    offered cash discounts to its customers to pay its bills in cash.

On or about April 28, 2008, Ahava CA's, counsel i.e. Robert Hirsh ("Hirsh") faxed a letter to Judge Buchwald, which states, in pertinent part that ʌcontrary to Levin's letter, there is no evidence that Ahava CA is transferring its assets away. A copy of the April 28, 2008 letter is attached to the Hirsch Declaration as Exhibit "C." Thus, the Bank and its counsel were on notice that its impairment claims were not true.

On April 29, 2008, Judge Buchwald held a telephonic conference call with multiple counsel participating, including Levin and Feurstein for the Bank, Hirsh and Lawrence Fox ("Fox") for Ahava CA, and David Antonucci ("Antonucci") for the Judgment Debtors. During this call, Levin and/or Feurstein represented, among other things, to the Court that the Bank had

4

Ahard evidence" that Ahava CA had Aimpaired" the Collateral. Once again, no such evidence exists or has ever existed. Levin's and/or Feurstein's statements to the Court are unsupported by evidence and not true.

From on or about April 29-May 9, 2008, there was significant activity relating to the Motion, including motion letters, phone calls, and telephonic hearings. On May 9, 2008, Judge Buchwald held another telephonic conference call with multiple counsel participating, including Feurstein and Oleske for the Bank and Hirsh and Fox for Ahava CA. During this call, Feurstein said, among other things, that:

> Our concern, is that the collateral, including the machinery, including the receivables, including the trademarks, are going to be damaged by the continued operation of Fariborz Banayan

See 5/9/08 Transcript ("Transcript") at 15:24-16:2; (A copy of the transcript is attached to the Hirsch Declaration as Exhibit "D.")

> in addition to the equipment, there are receivables that can be harmed.

Transcript at 16:20-21;

> we understand that Ahava CA has gone out to the community and offered to take a discount on its receivables if people would pay in cash.

Transcript at 17: 2-4; and

> [re: discovery] what we would ask for is that Ahava CA be required to produce all its organizational material, including anything to the extent of minutes or any other corporate documents, as well as their financial information which they were in part ordered to produce...If we could get that by the June 4 date, I think we could be satisfied with that."

Transcript at 46:13-20.

At this conference, among other things, Judge Buchwald noticed the Motion for a June 6,

2008 hearing, with Ahava CA's opposition papers being due on May 22, 2008. In derogation of Feurstein's May 9, 2008 representations to the Court where he said that the Bank only required documents to prosecute the Motions, on May 19, 2008, Feurstein faxed a letter to the Court in which he requested five depositions, i.e. Moise, Fariborz, Ana Banayan, Ari Katz, and Reuben Baityakov ("Baityakov"). A copy of the letter is attached to the Hirsh Declaration as Exhibit "E."

From May 9, 2008 through on or about May 22, 2008, Ahava CA's attorneys worked Aaround the clock" to prepare Ahava CA's voluminous opposition to the Motion. In addition, Ahava CA's attorneys reviewed and responded to multiple letters sent by the Bank's counsel to the Court. The central theme of the Bank's letters was its demand for discovery relating to obtaining evidence in support of the Motion.

Ahava CA filed its opposition to the Motion on or about May 22, 2008 after Judge Buchwald denied Ahava CA's request for a short briefing extension, which the Bank opposed. The Bank claimed that it required "emergency" relief, when no emergency existed.

On May 22, 2008, various counsel for the Bank, Antonucci, and Hirsh had a telephone conference in which Judge Buchwald:

    a.    granted the Bank's request to take several depositions to obtain evidence in support of the Motion;

    b.    granted the Bank's request to review Ahava CA's financial books and records to obtain evidence in support of the Motion;

    c.    granted the Bank's request to inspect the Lewis County dairy manufacturing plant which was being leased by Ahava CA to discover potential evidence of impairment of Collateral;

  d. granted the Bank's request to inspect the St. Lawrence County dairy manufacturing plant which was being leased by Ahava CA to discover potential evidence of impairment of Collateral;

  e. granted the Bank's request to inspect the Kings County dairy distribution facility which was being leased by Ahava CA to discover potential evidence of impairment of Collateral;

  f. granted defendants' request to depose various Bank witnesses, including Robert Bloch ("Bloch");

  g. vacated the June 6, 2008 hearing on the Motion; and

  h. referred the Motion to Magistrate Judge Dolinger, who was charged with hearing it, ordering an expedited discovery schedule, and overseeing all discovery issues, all related to the Motion.

On May 23, 2008, the Bank, via Feurstein faxed Magistrate Judge Dolinger a letter motion which requested discovery including:

  a. access to Ahava CA's plant and equipment to determine whether any Collateral had been impaired;

  b. access to all of Ahava CA's computers; and

  c. access to Ahava CA's financial books and records.

On May 23, 2008, Magistrate Judge Dolinger conducted a discovery conference. During this conference, Feurstein represented that the Motion's relief was premised upon the Bank's being able to prove that Ahava CA had impaired the Collateral, and that the discovery which the Bank wanted to take would produce Afurther evidence" in support of the existing Ahard

7

evidence" which the Bank possessed that Ahava CA had impaired the Collateral. Magistrate Judge Dolinger issuing a comprehensive, omnibus, 15 point order, which among other things:

    a.    ordered in point 1 that the Bank can inspect Ahava CA's three New York facilities on May 28 and 29, 2008 for the purpose of determining whether there has been any impairment of the Collateral and for general discovery purposes. These inspections included production of Ahava CA's books and records, including the information stored on its computers. Further, the Court ordered that Ahava CA produce all of the documents identified in Feurstein's May 23, 2008 letter motion;

    b.    ordered in point 2 that:

        1.    by June 4, 2008, the Bank must advise Ahava CA that it will be arguing at the hearing of the Motion whether Ahava CA impaired the Collateral;

        2.    by June 4, 2008, the Bank must produce any documents in support of its claim that Ahava CA impaired the Collateral*; and,

        3.    on June 5, 2008, the Bank must produce for deposition a FRCP 30(b)(6) witness(es) supporting impairment of Collateral;

    c.    ordered in point 7 that Fariborz be deposed on June 2, 2008;

    d.    ordered in point 10 that the Bank must produce Bloch for deposition on June 12, 2008 and produce two other Bank witnesses for deposition on June 13, 2008;

    e.    ordered in point 15 that this discovery order was being made in connection with the Motion; and,

    f.    ordered in point 14 that the Motion would be heard on June 18, 2008.

At great expense, Ahava CA fully complied with Magistrate Judge Dolinger's order. All

---

* The Bank never produced a single document supporting impairment of the Collateral.

8

three of its New York facilities were inspected by the Bank, and Ahava CA produced its documents for production and copying on four separate occasions. There were four document inspections due to the Bank's negligence. Simply put, the Bank failed to copy documents during its first three visits to Ahava CA's Kings County facility. The Bank even failed to send attorneys to these productions.

To insure that the documents were properly produced per Magistrate Judge Dolinger's order, Los Angeles based Fariborz flew cross-country to New York to supervise the document production.

On May 30, 2008, Magistrate Judge Dolinger, various counsel for the Bank and Hirsh had a telephone conference in which Magistrate Judge Dolinger ordered, among other things, that if by May 30, 2008, the Bank has not notified Ahava CA that it was contending that Ahava CA impaired physical Collateral, the Bank was deemed to have waived the issue for the purposes of the Motion. The Bank failed to produce any documents re: impairment of physical collateral by May 30, 2008 or any other time.

On June 3, 2008, Hirsh faxed Magistrate Judge Dolinger a letter motion regarding the Bank's failure to abide by the Court's discovery orders, which led to Magistrate Judge Dolinger's June 4, 2008 order that the Bank serve Ahava CA no later than June 4, 2008, 5:00 pm with "documents pertaining to any alleged financial impairment" of the Collateral. On June 4, 2008, Feuerstein emailed Hirsh six documents which he represented in a June 4, 2008 email to be the "impairment documents." The Bank's own witness did not testify that these documents proved any impairment.

Also on June 4, 2008, in response to various telephone conferences with the Court as well as Feurstein's June 3, 2008 letter, Magistrate Judge Dolinger ordered, among other things, that

9

the Bank purchase and cause to be delivered to Fariborz his deposition transcript on an overnight basis such that he could immediately correct it so that the parties could timely prepare reply and sur-reply briefs. The Bank breached Magistrate Judge Dolinger's June 4, 2008 order by not delivering Fariborz's June 4, 2008 deposition transcript on June 5, 2008. The transcript did not arrive until on or about June 6, 2008 in the afternoon, which prevented Fariborz from timely reviewing it.

On June 5, 2008, Hirsh deposed the Bank' FRCP 30(b)(6) witness, Edward C. Gibbon ("Gibbon"), whom Feuerstein had previously represented to Magistrate Judge Dolinger and Hirsh would testify that Ahava CA had impaired collateral in its possession in which the Bank had a security interest; and that Ahava CA had allegedly engaged in other wrongful conduct.

Contrary to Feuerstein's representations, Gibbon failed to testify that Ahava CA had impaired any collateral or had engaged in wrongful conduct. In particular, Gibbon testified:

   a.   at 102:12-15 that the documents he has been able to review so far does allow him to render any kind of opinion in regard to the operations of Ahava CA;

   b.   at 103:3-5 that he cannot give any opinion that Ahava CA transferred any of its assets outside the ordinary course of business;

   c.   at 103:20 that he has no opinion as to whether Ahava CA impaired its own assets;

   d.   at 104:15-17 that he has no opinion as to whether Ahava CA impaired assets belonging to AF;

   e.   at 104:21 that he has no opinion as to whether Ahava CA impaired assets belonging to SS;

   f.   at 104:24 that he has no opinion as to whether Ahava CA impaired assets

10

belonging to YR;

  g. at 105:3 that he has no opinion as to whether Ahava CA impaired assets belonging to Moise;

  h. at 105:6 that he has no opinion as to whether Ahava CA impaired assets belonging to LCDC;

  i. at 105:9 that he has no opinion as to whether Ahava CA impaired assets belonging to SLFC;

  j. at 106:9 that he has no opinion as to whether Ahava CA received an asset from AF for which it failed to pay consideration;

  k. at 106:16 that he has no opinion as to whether Ahava CA received an asset from LCDC for which it failed to pay consideration;

  l. at 106:21 that he has no opinion as to whether Ahava CA received an asset from SLFC for which it failed to pay consideration;

  m. at 106:25 that he has no opinion as to whether Ahava CA received an asset from YR for which it failed to pay consideration;

  n. at 107:4 that he has no opinion as to whether Ahava CA received an asset from SS for which it failed to pay consideration;

  o. at 107:6 that he has no opinion as to whether Ahava CA received an asset from Moise for which it failed to pay consideration; and

  p. at 100:19-23 that he was unaware of any impropriety relating to Ahava CA.

A copy of the Gibbon transcript is attached to the Hirsch Declaration as Exhibit "M."

  The Bank never served Ahava CA with documents establishing impairment of non-

physical collateral. The Bank failed to produce any evidence establishing impairment of any Collateral by Ahava CA of any sort at any time.

On June 6, 2008, Hirsh, Oleske and Antonucci participated in conference call with Magistrate Judge Dolinger, in which, among other things, Oleske admitted to Magistrate Judge Dolinger that the Bank had breached Magistrate Judge Dolinger's discovery order by not serving all counsel with documents in connection with Moise's deposition, which had already started. This led to Magistrate Judge Dolinger issuing a June 6, 2008 order, which, among other things, ordered that the Bank cause all counsel to receive all documents in connection with Moise's deposition no later than June 6, 2008, close of business.

The Bank breached Magistrate Judge Dolinger's June 6, 2008 order and failed to produce the court ordered documents.

On June 11, 2008, Hirsh, Oleske and Antonucci had a conference call with Magistrate Judge Dolinger, in which, among other things, the Court noted that the Bank had breached the Court's discovery order and failed to produce the required documents. The Court again ordered that the Bank provide documents to all counsel no later than June 11, 2008, 5:00 pm and that the currently scheduled depositions of various Bank witnesses would be adjourned for a few days to allow defendants an opportunity to review the documents which had been ordered produced. The Court also adjourned the June 18, 2008 hearing on the Motion.

On June 11, 2008, Oleske faxed a letter to Magistrate Judge Dolinger, which states, among other things:

> In light of the Court's ruling with respect to the production of documents to...[Ahava CA's] counsel, and the indefinite adjournment of the previously scheduled hearing, Signature {the Bank] has instructed us to withdraw its Motion...[The Bank] believes that alternate means of protecting its interests are available that may achieve its goal more efficiently and without the

12

    need for additional expedited discovery and motion practice that
the continued prosecution of its motion would require.

On June 12, 2008, Hirsh, Oleske and Antonucci participated in a conference call with Magistrate Judge Dolinger, in which, among other things, the Court:

  a.  granted the Bank's request to withdraw the Motion; and,

  b.  ordered that defendant will have up and until July 7, 2008 to file a motion for attorney's fees and costs.

## III.

### SANCTIONS SHOULD BE AWARDED AGAINST THE BANK AND ITS ATTORNEYS PURSUANT TO THE COURT'S INHERENT POWER

Federal courts have inherent power to impose sanctions against both attorneys and parties for bad faith conduct in litigation or for willful disobedience of a court order. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-766 (1980). The Court's inherent powers Aare governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, supra. at 43. Bad faith conduct may be sanctioned under the court's inherent powers, even if it is also sanctionable under other rules such as Rule 11 or 28 USC Section 1927: AThese other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions." Id. at 51-52. Sanctions under the court's inherent power are particularly appropriate for fraud practiced upon the court, Id. at 54. Seriously misleading the court constitutes bad faith, sanctionable conduct under the court's inherent power. Lipsig v. National Student Marketing Corp., 663 F. 2d 178, 181 (D.C. Cir. 1980).

Misusing the privilege of taking discovery constitutes sanctionable conduct under the court's inherent power. Id.  Willful disobedience of court orders constitutes grounds for the issuance of sanctions under the court's inherent power. Chambers v. NASCO, supra. at 45

Monetary sanctions should be issued against the Bank and its attorneys for the following reasons:

1.      The Bank, via its counsel, repeatedly and falsely represented to the court that the Bank possessed Ahard evidence" that Ahava CA had impaired the Collateral. These repeated, false representations induced the court to: issue an Order to Show Cause; direct the parties to engage in expedited, omnibus discovery relating to the Motion; and caused Ahava CA to spend over $124,097.60 in attorney's fees and costs;

2.      The Bank breached at least four discovery orders issued by Magistrate Judge Dolinger. The Bank's final flouting of a discovery order occurred on June 11, 2008, which triggered the Bank to withdraw the Motion (although Ahava CA believes that the Bank intentionally failed to comply with the discovery orders as a misguided ruse to deflect the court's attention to the real issue, i.e. the Bank knowingly filed and maintained the meritless Motion, which at all times was devoid of evidentiary support.

**IV.**

**SANCTIONS SHOULD BE AWARDED AGAINST
THE BANK'S ATTORNEYS PURSUANT TO 28 USC SECTION 1927**

An attorney Awho so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct." 28 USC Section 1927. "Unreasonably and vexatiously" require a showing of Abad faith, improper motive or reckless

disregard of the duty owed to the court. <u>Edwards v. General Motors Corp.</u>, 153 F. 3d 242, 246 (1998). Sanctions pursuant to Section 1927 must be supported by a finding of subjective bad faith. <u>Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.</u>, 210 F. 3d 1112, 1118 (9th Cir. 2000). Bad faith may be found where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims. <u>Schwartz v. Milion Air, Inc.</u>, 341 F. 3d 1220, 1225 (11th Cir. 2003). Further, non-frivolous filings are sanctionable under Section 1927 if made if made with the intent to harass. <u>In re Keegan Management Co. Securities Litigation</u>, 78 F. 3d 431, 436 (9th Cir. 1996).

In <u>B.K.B. v. Maui Police Dept., County of Maui</u>, 276 F. 3d 1091, 1106 (9th Cir. 2002), an attorney was sanctioned under Section 1927 for, among other things, misleading a court as to the nature of the evidence.

Imposition of Section 1927 sanctions is appropriate as soon as the misconduct appears in order to avoid the appearance of impermissible post judgment retribution. <u>Salstrom v. Citicorp Credit Corp. Services, Inc.</u>, 74 F. 3d 183, 185 (9th Cir. 1996).

In the instant case, sanctions should be awarded against the Bank's Attorneys because:

a. The Bank's Attorneys repeatedly misrepresented to the Court that they had "hard evidence" that Ahava CA impaired the Collateral. The truth is that at no time was there or is there any evidence that Ahava CA impaired the Collateral;

b. The Bank's Attorneys multiplied the proceeding and engaged in vexatious discovery and letter applications to the Court in a fruitless effort to obtain evidence of a non-existent impairment of Collateral evidence. The Bank's Attorneys should have withdrawn the Motion. Instead, they placed the parties on a Avery fast and very expensive litigation treadmill."

15

**V.**

**<u>CONCLUSION</u>**

For the foregoing reasons, Ahava CA respectfully requests that the Court grant its motion sanction Signature Bank and its counsel and award Ahava CA its attorney's fees and costs.

Dated: Beverly Hills, California
       July 3, 2008

                                ROBERT W. HIRSH & ASSOCIATES

                                By: /s/ Robert W. Hirsh
                                    ROBERT W. HIRSH (102731)
                                8383 Wilshire Boulevard, Suite 510
                                Beverly Hills, California 90211
                                Telephone: 310-274-8507
                                Facsimile: 310-275-4050
                                   -and -

                                SETH EISENBERGER (SE-6769)
                                108 Airport Executive Park
                                Nanuet, New York 10954
                                Telephone: 845-426-3400
                                Facsimile: 845-426-3401

                                Attorneys for Defendant, Counter-claimant and
                                Cross-claimant Ahava of California, LLC