Mara B. Levin, Esq.
David Feuerstein, Esq.
John Oleske, Esq.
Attorneys for Plaintiff
  Signature Bank
Herrick, Feinstein LLP
2 Park Avenue
New York, New York 10016
Tel: (212) 592-1400
Email: mlevin@herrick.com

**Electronically-Filed Document**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
SIGNATURE BANK,                                 :
                                                :
                      Plaintiff,                : 08 Civ. 3893 (NRB)
                                                :
          - against -                           :
                                                :
AHAVA FOOD CORP. d/b/a NORTH COUNTRY            :
CHEESE CORP., LEWIS COUNTY DAIRY CORP.,         :
ST. LAWRENCE FOOD CORP. d/b/a PRIMO             :
FOODS, YONI REALTY, LLC, SCHWARTZ AND           :
SONS QUALITY DISTRIBUTORS, INC., MOISE          :
BANAYAN, ANA BANAYAN a/k/a CHANA                :
BANAYAN, REBECCA BANAYAN a/k/a                  :
REBECCA BARIMYAN a/k/a REBECCA                  :
BANAYAN-LIEBERMAN, FARIBORZ BANAYAN             :
a/k/a AARON BANAYAN, RUBEN BEITYAKOV,           :
ARI KATZ, AHAVA OF CALIFORNIA, LLC d/b/a        :
AHAVA NATIONAL FOOD DISTRIBUTOR and             :
NORTH COUNTRY MANUFACTURING, and                :
JOHN DOES 1 through 50,                         :
                                                :
                      Defendants.               :
------------------------------------------------------------------ x

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION TO AMEND THE AMENDED
<u>VERIFIED COMPLAINT PURSUANT TO F.R.C.P. 15(a)(2)</u>**

TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 2

ARGUMENT .................................................................................................................................. 5

    SIGNATURE SHOULD BE GRANTED
    LEAVE TO AMEND PURSUANT TO F.R.C.P. 15(a)(2) ...................................................... 5

        1    Signature Has Not Unduly Delayed Its Motion For Leave To Amend ......................... 6

        2.   Signature Has Not Filed This Motion In Bad Faith Or For A Dilatory Purpose ............ 7

        3.   Defendants Will Not Be Prejudiced By Signature's Proposed Amendment .................. 8

        4.   Signature's Proposed New Claims Are Not Futile. ..................................................... 10

CONCLUSION ............................................................................................................................. 13

## PRELIMINARY STATEMENT

When Signature filed its initial lawsuit in state court in December 2007, it suspected that the Judgment Debtors' failure to pay their debts was only the tip of an iceberg of wrongdoing. When Signature began enforcement procedures on the $9 million judgment it obtained in that proceeding on March 14, 2008, Signature learned that its suspicions were in fact true and that the Judgment Debtors had fraudulently conveyed all of their assets to an alter-ego company, Ahava of California, LLC ("AOC"). As a result, Signature commenced the instant proceeding in state court on April 2, 2008 in an effort to prevent the Judgment Debtors from evading the judgment through the artifice of AOC.

Signature's first complaint in this proceeding was based on limited information and evidence regarding defendants' fraudulent conduct. Upon discovering additional facts and evidence of illegalities, including facts that revealed the defendants' operation of a corrupt enterprise through a pattern of racketeering, Signature amended its state court complaint, as of right, to include, among other things, claims for violations of the RICO statute. On April 25, 2008, following that first amendment of the complaint, defendants removed the action to this Court.

Since removal, the parties have conducted limited discovery, which, along with Signature's own independent investigation, has provided additional evidence of defendants' fraud and criminality. Specifically, defendants have disclosed that all of the Judgment Debtors' assets have been either sold or leased to AOC pursuant to various purported written agreements between those parties. While defendants contend that these agreements vindicate their position, in reality, they only confirm that the Judgment Debtors for over a year have been fraudulently conveying Signature's collateral in direct violation of the security agreements between the Judgment Debtors and Signature. Also, Signature has independently learned that AOC, the alter

2

ego of the Judgment Debtors, has pledged all of its assets to two third-party factors in exchange for financing. Because all of AOC's assets are either Signature's collateral, or else proceeds of that collateral, the pledge to these third-party factors was prohibited and in direct violation of the loan agreements between Signature and the Judgment Debtors.

Separately, Signature has additional recourse against the Judgment Debtors not sought in the first two versions of the complaint. Specifically, Signature had agreed to fund overdrafts on the accounts of the Judgment Debtors during their banking relationship with Signature and up until the final default of the Judgment Debtors under the loan documents in or around November 2007. Overdrafts prior to August 2007 were consolidated and added to the loan principal at that time, and are included in Signature's existing judgment. However, Signature advanced to the Judgment Debtors approximately $2 million in overdrafts (including interest) between August 2007 and November 2007, and Signature has not heretofore sought to collect on those amounts.

Finally, Signature's proposed amendment would add two new parties, Miriam Schwartz and Yehuda Banayan. Ms. Schwartz was the principal of Judgment Debtor Schwartz & Sons Quality Distributors, Inc. ("Schwartz & Sons"), which was one of the primary vehicles for the fraudulent conveyance of the Judgment Debtors' assets to their alter ego, AOC. Yehuda Banayan and his wife, Miriam Schwartz, are relatives of two existing defendants, Moise Banayan and Fariborz Banayan, and participated in the operation of the corrupt enterprise orchestrated by those defendants. Both Ms. Schwartz and Yehuda Banayan are key players in defendants' fraudulent scheme deriving income through a pattern of racketeering activity and participants in the criminal enterprise which forms the basis of the RICO violations, and Signature should be permitted to hold them accountable.

Now, Signature asks the Court's leave to amend the Amended Verified Complaint so as to seek the following relief:

3

- Rescission of the fraudulent conveyances of the Judgment Debtors' business to AOC;

- Transfer of the conveyed assets directly to Signature;

- Declaratory judgment that AOC is an alter-ego of the Judgment Debtors and the Individual Defendants;

- Declaratory judgment that Signature's security interests in AOC's assets are superior to that of any other party;

- Accounting of all of the books, records, and other financial information of all of the corporate defendants; and

- Compensatory and punitive damages on account of the Judgment plus the Judgment Debtors' overdrafts on their accounts with Signature (tripled pursuant to the RICO statute) and reasonable attorneys' fees, as against all of the existing defendants, as well as Miriam Schwartz and Yehuda Banayan.

It is generally said that leave to amend should be freely granted, and this application should be no exception to that rule. The amendment is based in large part on newly-discovered evidence; it will serve to make the action reflect a more comprehensive sweep of the disputes between the parties; the new claims for relief it asserts are all properly pleaded; and there can be no prejudice to defendants, whose own conduct is primarily responsible for these claims not being asserted at an earlier date, who cannot reasonably contend that they are being caught off guard.

Throughout this proceeding, defendants have refused to divulge any information at all about their past and present activities unless forced to do so by the Court. This is undoubtedly because every time such information is disclosed, it provides further evidence of defendants' wrongdoing. Signature's need to amend its complaint should come as no surprise, as Signature has been forced to acquire piecemeal the mounting evidence establishing the criminal enterprise created by the defendants, and the egregious fraud perpetrated upon Signature. Defendants cannot be heard to complain that Signature should not be permitted to amend its complaint, when

4

they themselves are the reason the amendment is necessary. The Court should grant Signature leave to amend.

## ARGUMENT

## SIGNATURE SHOULD BE GRANTED LEAVE TO AMEND PURSUANT TO F.R.C.P. 15(a)(2)

In federal courts, leave to amend "shall be freely given when justice so requires." F.R.C.P. 15(a)(2). "The Supreme Court has held that this provision should be heeded absent reasons "such as [1] undue delay, [2] bad faith or dilatory motive on the part of the movant, ... [3] undue prejudice to the opposing party ... [or] [4] futility of amendment." *Gluckman v. American Airlines*, 92 Civ. 3740 (SWK) (NRB), 1994 U.S. Dist. LEXIS 17967, * 2 (S.D.N.Y. Dec. 16, 1994) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962)). The test for "futility of amendment" is the same as that applied in determining a motion to dismiss brought pursuant to Rule 12(b)(6). *In re Merrill Lynch & Co. Research Reports Secs. Litig.*, 02 MDL 1484, 02 CIV 9690 (JFK), 2008 U.S. Dist. LEXIS 44344, *12 (S.D.N.Y. June 4, 2008).

None of the four exceptions to the presumption that leave will be granted apply in this instance. Signature's motion for leave has been brought promptly (and indeed, is brought pursuant to the Court's own timetable); the motion cannot be said to be brought in bad faith or to delay proceedings, as it serves instead to bring relevant facts and disputes into the case at a relatively early stage; defendants cannot claim prejudice, when they had (sometimes exclusive) knowledge that these facts and disputes would have to be litigated and none of the defendants have even answered the first amended complaint; and all of the claims for relief asserted in the proposed pleading would survive a motion to dismiss.

5

1.  **Signature Has Not Unduly Delayed Its Motion For Leave To Amend**

There is no bright-line rule to determine when a motion for leave to amend has been "unduly delayed" to the extent that denial of the motion would be appropriate. Instead, courts have held to a general, and discretionary standard, that "[when] 'a considerable period of time has passed between the filing of the complaint and the motion to amend…the burden [is] upon the movant to show some' valid reason for his neglect and delay." *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y. 1983), *aff'd,* 730 F.2d 910 (2d Cir. 1984). Here, a considerable period of time has not passed (it has been 3 months since the inception of the action and 2½ months since the first amendment), and even if the interim between amendments could somehow be considered "considerable," Signature would in any event have a "valid reason" for not having moved for leave before this point.

As a threshold matter, the appropriate timetable for amending Signature's pleadings was determined by the Court, when it set the scheduling order that called for a specific date by which all parties were directed to make a motion for leave. Although there is no case law directly on point, it seems only logical that where a court directs that a motion for leave to amend can be filed by a certain date, a party should not be punished for adhering to that date by a determination that the motion is untimely.

But even if the Court had not established a presumptively-timely date for filing motions for leave to amend, the period of time between Signature's first amendment and this proposed second amendment cannot be deemed "considerable." Indeed, in every reported case in which this Court has denied a motion for leave to amend on the grounds of untimeliness, the time between filings has been significantly longer than the mere 2½ months at issue here. *See, e.g., Sanders*, 582 F. Supp. at 952 (2½ years); *AMA v. United Healthcare Corp.*, 00 Civ. 2800 (LMM) 2006 U.S. Dist. LEXIS 93864,*11 (S.D.N.Y. Dec. 29, 1996) (same); *Briarpatch Ltd. L.P. v.*

6

*Geisler Roberdeau, Inc.*, 148 F. Supp. 2d 321, 329-30 (S.D.N.Y. 2001), *aff'd in relevant part*, 373 F.3d 296 (2d Cir. 2004) (18 months).

Finally, even if 2½ months could be classified as a "considerable" time, Signature certainly has a "valid reason" for not having made its motion earlier. First, some of the information upon which the proposed amendment is based was uncovered only through the recent, and tortuous, process of extracting discovery from defendants. Second, the parties were engaged in extensive motion practice relating to, among other disputes, Signature's and AOC's motions for a receiver and for abstention, respectively, which, for all practical purposes, precluded any motion for leave being filed during that time. Lastly, Signature's position as the victim of what this and other courts, including the Northern District of New York and Superior Court of California, have already determined is a likely fraud by defendants should, by itself, provide a "valid reason" to allow this amendment; otherwise, the perpetrators of such schemes would be permitted to profit tactically from their own deception. As such, the 2½ months between this and the first amendment should not preclude Signature from amending its complaint.

2.  **Signature Has Not Filed This Motion In Bad Faith Or For A Dilatory Purpose**

It is plain from the face of Signature's proposed amendment, and the substantive additions made therein, that the motion for leave has not been brought in bad faith, but rather, to secure Signature's rights and properly expand the scope of this litigation to include facts and disputes inextricably tied to those matters already before the Court. According to our research, this Court has rarely, if ever, denied a motion for leave to amend based on bad faith, and the only examples it has cited are far removed from the circumstances here. *See Tomlinson v. St. Paul Reinsurance Mgmt. Corp.*, 96 Civ. 4760 (JFK), 1998 U.S. Dist. LEXIS 1728, *10 (S.D.N.Y. Feb. 17, 1998) (denial of motion on account of bad faith appropriate where "[p]laintiff attempts to

7

destroy the federal court's removal jurisdiction by altering his complaint."). Indeed, the *Tomlinson* court refused to deny the plaintiff's motion in that case despite the fact that Magistrate Judge Dolinger had already sanctioned the plaintiff for bad faith conduct in discovery. *Id.* Here, defendants can show no bad-faith motive on the part of Signature, and thus, the motion cannot be denied on this basis.

3. **Defendants Will Not Be Prejudiced By Signature's Proposed Amendment**

"In determining what constitutes 'prejudice,' courts consider 'whether the assertion of the new claim would . . . require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" *Sotheby's Int'l Realty, Inc. v. Black*, 06 Civ. 1725 (GEL), 2007 U.S. Dist. LEXIS 92168, *14 (S.D.N.Y. Dec. 13, 2007). Here, Signature's proposed amendments would not impose any meaningful, additional burdens on defendants, nor would they delay resolution of the dispute.

In the first instance, not a single defendants has answered or otherwise moved to dismiss the first amended complaint and discovery is in the infant stage with only two depositions conducted. The proposed new claims would not require "significant" additional discovery apart from the discovery which has yet to be conducted, nor would they occasion any serious delay, because they are either based on information that was itself recently revealed by discovery, or on information that has been within defendants' knowledge (and sometimes exclusive knowledge) since before this litigation was even commenced. Specifically, Signature's claims based on defendants' purported lease transactions and trademark sale and AOC's factoring of "its" assets, are derived from information produced in discovery or revealed within the last two months (and which were known to defendants but not to Signature), and are, for the most part, part and parcel of the additional discovery that will be taken with regard to the pending claims in order to be fully litigated.

8

Signature's claims based on the overdrafts have also been well known to the Judgment Debtors since at least October 2007, when Signature turned off the spigot and sent the Judgment Debtors their closing account statements demonstrating close to $2 million in overdrafts advanced by Signature to the Judgment Debtors. Finally, the addition of Miriam Schwartz and Yehuda Banayan will not significantly delay proceedings, as depositions have not begun, other than of the two principal figures, Moise Banayan and Fariborz Banayan. *In fact, none of the defendants have even answered the First Amended Complaint.*

To the extent defendants cry "prejudice," they can only look to themselves for responsibility for their predicament. It is defendants' obstinance in discovery, and in particular, their extended concealment of the key "transaction" documents between the Judgment Debtors and AOC, two of which were entered into approximately one year ago, that has resulted in the gradual nature of Signature's widening awareness of defendant's wrongdoing. Further, it was AOC's failure to disclose its factoring arrangements that resulted in Signature's failure to include that claim in its First Amended Complaint. The Judgment Debtors certainly cannot claim prejudice in being held responsible for the $2 million in overdrafts on their own bank accounts, of which they have always been fully aware, and had every reason to expect that Signature would attempt to recover. Finally, Miriam Schwartz and Yehuda Banayan have been intimately involved in defendant's fraudulent scheme from the very beginning—their addition as party defendants is necessary to ensure that all of the parties responsible for Signature's damages are held accountable.[1]

---

[1] While the third-party factors to whom AOC has pledged its assets are named as nominal defendants, Signature has already begun to take discovery from them via subpoena, and anticipates that further discovery, if any, would be minimal.

4.  **Signature's Proposed New Claims Are Not Futile**

As noted above, the standard for determining a proposed amendment's "futility" is the same standard applied to a motion to dismiss brought pursuant to Rule 12(b)(6). Specifically, the court must accept the factual allegations of the complaint as true, and should "read the complaint generously, and draw all inferences in favor of the pleader." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989).

To survive a motion to dismiss, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Here, Signature's proposed amendments far exceed this standard, as the evidence already supporting Signature's claims ensures that its allegations are undoubtedly more than simply "speculative."

First, Signature's claims for breach of contract and rescission based on the defendant's use of sham, paper transactions in an attempt to somehow validate the fraudulent conveyances are grounded in the plain language of the agreements between the Judgment Debtors and Signature. The proposed pleading alleges that the Security Agreement between Signature and the Judgment Debtors precluded the Judgment Debtors from selling or leasing any of the collateral securing the Judgment Debtors' loans. (¶ 84).[2] It alleges that the trademarks, equipment, and other assets the Judgment Debtors conveyed, whether by lease, sale or otherwise, to AOC through their fictitious sale and lease "agreements" were included among that collateral. (¶¶ 84-88). It alleges that Signature had a perfected UCC security interest in that collateral. (PSAC at ¶¶ 14, 114). And it alleges that the terms of these documents, whether entered into on the dates set forth therein or, more likely, being after-the-fact, manufactured "agreements", violate the explicit terms of the Judgment Debtors' security agreements with Signature. (PSAC

at ¶¶ 84-88). This is all that should be required for Signature to seek to reverse the prohibited transactions.

Second, Signature's claim for a declaratory judgment vis-à-vis the third-party factors who have extended financing to AOC in exchange for a lien on "AOC's" assets is similarly sufficiently pleaded to withstand a motion to dismiss. Signature contends that AOC is a fraudulent transferee, and/or an alter ego, of the Judgment Debtors. (¶¶ 62-106). As a result, all of AOC's assets, which were "transferred" to it or were manufactured by AOC using the fraudulently transferred assets rightfully belonging to Signature, constitute the illegal proceeds of the use of those fraudulently transferred assets, and are still properly subject to Signature's superior security interest stemming from its Security Agreement with the Judgment Debtors. Resolution of this controversy requires a determination as to whether AOC is an alter ego of the Judgment Debtors or a fraudulent transferee of the Judgment Debtors' assets and, thus, properly belongs as part of this litigation. Signature's request that this claim be adjudicated now cannot be deemed futile.

Third, Signature's claim based on the Judgment Debtors' $2 million overdraft is plainly well-pleaded, in that it differs in no material respect from any other bank's claim to recover amounts paid on checks that would have been returned for insufficient funds if not for the advancement of funds by the Bank. All that is required for such a claim are the allegations present here: the existence of a banking relationship, the drafting of checks by the defendant in excess of the amounts on deposit, the payment by the bank on those checks, and the defendant's failure to bring its account to balance. (¶ 52-53).

Finally, Signature's claims against Miriam Schwartz and Yehuda Banayan cannot be turned away as futile, given the direct involvement those two individuals had in defendants'

---

[2] References to "¶ __" are to the Proposed Second Amended Complaint.

11

criminal scheme to defraud Signature (and a Judgment Debtor) used by defendants to hide their activities and surreptitiously convey their assets between their various entities. (¶¶ 48-50). Signature alleges that Yehuda Banayan, Miriam Schwartz's husband, was a day-to-day participant in the Judgment Debtors' business and/or a co-conspirator with Miriam Schwartz to commit acts in violation of the RICO Act. (¶¶ 48-50, 117). Just as Signature has a right to hold the masterminds of the scheme responsible for the massive damage caused to Signature by their fraud, so it should be permitted to add new participants to the litigation as their role in the conspiracy becomes apparent.

Signature's proposed amendments do not represent a futile attempt to rescue a defective original pleading, as is often the case where leave to amend is denied on this grounds. Rather, they are a careful expansion of the Amended Verified Complaint that is based on specific evidence unearthed in discovery and on well-documented, indisputable debts owed by banking customers for checks written in excess of amounts on deposit. These claims are not only strong enough to carry the relatively light burden of a plaintiff opposing a motion to dismiss, but, as this Court and the state court have already found, the underlying claims upon which the amendment is built show that Signature is, in fact, likely to succeed in proving that it has been defrauded by defendants along the very lines alleged in the proposed pleading. As such, the Court should find that the proposed amendment would not be futile, and that Signature should therefore be granted leave to amend.

## CONCLUSION

For the foregoing reasons, plaintiff Signature Bank respectfully requests that the Court grant its motion for leave to amend the Amended Verified Complaint.

Dated: New York, New York
July 7, 2008

HERRICK, FEINSTEIN LLP

By: _____
Mara B. Levin
David Feuerstein
John Oleske
2 Park Avenue
New York, New York 10016
Telephone:  (212) 592-1400
Facsimile:  (212) 592-1500

Attorneys for Plaintiff Signature Bank